Jerry HILL d/b/a American Sewing
& Bag Company, Plaintiff–
Appellee,

v.

BLIND INDUSTRIES AND SERVICES
OF MARYLAND, Defendant–
Appellant.

No. 97–55382.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1998.

Decided June 4, 1999.

C. Stephen Howard and Scott Vick, Milbank, Tweed, Hadley & McCloy, Los Angeles, California, for defendant-appellant.

Frederick J. Wood, Atascadero, California, for plaintiff-appellee.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and PANNER, District Judge.*

PANNER, District Judge:

Defendant Blind Industries & Services of Maryland ("BISM") appeals from a judgment in favor of plaintiff Jerry Hill (dba American Sewing & Bag Company)

---

* The Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

("Hill") on Hill's breach of contract claim. We affirm.

The sole issue on appeal is whether the district court properly denied BISM's motion to dismiss this action pursuant to the Eleventh Amendment. We hold that BISM consented to jurisdiction in federal court by actively litigating this action on the merits, while waiting until trial to first assert Eleventh Amendment immunity. We therefore do not decide whether BISM is an "arm of the state" for Eleventh Amendment purposes.

## BACKGROUND

BISM contracted to purchase a substantial portion of the assets of Hill's business. When BISM failed to make payments allegedly due him, Hill brought this action in federal court for fraud and breach of contract. BISM moved to dismiss for lack of personal jurisdiction in California. The motion was denied. BISM filed an answer, and then unsuccessfully moved to dismiss the action on the ground that the amount in controversy was less than the jurisdictional minimum for diversity cases. BISM did not mention the Eleventh Amendment or sovereign immunity in either motion to dismiss and did not assert those defenses in its answer.

BISM filed a written consent to have a United States Magistrate Judge try the case and enter final orders and judgment. BISM conducted discovery, and moved to compel discovery and for sanctions. BISM participated in the pre-trial conference and filed trial materials including witness and exhibit lists, proposed jury instructions, and a trial memorandum.

On the opening day of trial, BISM asserted for the first time that it is an arm of the state and thus the Eleventh Amendment bars this action. The motion was taken under advisement and trial proceeded. The jury returned a verdict for Hill on his breach of contract claim, but found for BISM on the fraud claim. The trial court subsequently denied the motion to dismiss. In a thorough opinion, the Magistrate Judge considered the five factors we identified in *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1423 (9th Cir.1991), and concluded that BISM is not an arm of the state entitled to Eleventh Amendment immunity. BISM appeals from that decision.

## STANDARD OF REVIEW

■ We review *de novo* questions of Eleventh Amendment immunity. *Micomonaco v. Washington,* 45 F.3d 316, 319 (9th Cir.1995).

## DISCUSSION

### I.

■ Hill contends that BISM waived any Eleventh Amendment immunity it might possess by participating in extensive pre-trial activities and waiting until the first day of trial before objecting to the federal court's jurisdiction on Eleventh Amendment grounds. We agree.

By waiting until the first day of trial, BISM hedged its bet on the trial's outcome. Rather than send jurors and witnesses home while the parties briefed and argued the merits of BISM's Eleventh Amendment defense, the trial court properly took the motion under advisement and proceeded with trial. BISM thus had the best of both worlds. If BISM prevailed at trial, it could withdraw its motion and let the jury verdict stand. If BISM lost at trial, it could ask to have the verdict set aside on the ground that the action was barred by the Eleventh Amendment. BISM contends it could even have waited until after the verdict was returned before first asserting this defense.

Such conduct undermines the integrity of the judicial system. It also wastes judicial resources, burdens jurors and witnesses, and imposes substantial costs upon the litigants. In addition, when an Eleventh Amendment defense is first raised late in the case, the record may be inadequate to permit informed appellate review,

and the plaintiff may have difficulty obtaining evidence necessary to oppose the motion.

A party may gain an improper advantage through this tactic even without waiting until the first day of trial. The ruling on a motion for summary judgment, or on pre-trial matters such as motions *in limine*, can signal the probable outcome of the case. The integrity of the judicial process is undermined if a party, unhappy with the trial court's rulings or anticipating defeat, can unilaterally void the entire proceeding and begin anew in a different forum.

The rules of procedure in federal courts are structured to prevent such abuses. Defects in personal jurisdiction, venue, or service of process are waived unless asserted in a party's initial pleading. *See* Fed.R.Civ.P. 12(h)(1). Removal and remand are likewise governed by strict time limits. *See* 28 U.S.C. §§ 1446(c)(1), 1447(c). The policy against allowing litigants a "free shot" applies equally to plaintiffs and defendants. *Cf.* Fed.R.Civ.P. 41(a) (limiting plaintiff's right to voluntarily dismiss claim without prejudice).

■ We have recognized few exceptions to this policy. Lack of subject matter jurisdiction may be raised at any time because the parties cannot, by their consent, confer jurisdiction upon a federal court in excess of that provided by Article III of the United States Constitution. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Even this exception is narrowly construed to conserve judicial resources and prevent untoward manipulation. Thus, diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction if a party subsequently moves to another state, *see Freeport–McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (per curiam), or if the amount in controversy subsequently drops below the minimum jurisdictional level, *see St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293–95, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ Mootness is grounds to dismiss an action at any time, because there is no longer a case or controversy for purposes of Article III, but again the rule is narrowly construed to avoid manipulation. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (declining to vacate judgment after losing party voluntarily mooted case by settling while on appeal); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (defendant's voluntary cessation of challenged practice ordinarily does not deprive federal court of jurisdiction).

■ On occasion, we also have considered abstention arguments raised late in the proceedings. *See San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095 (9th Cir.1998). However, the essence of the abstention doctrine is that compelling prudential concerns justify the federal court staying its hand. Abstention "does not exist for the benefit of either of the parties but rather for 'the rightful independence of the state governments and for the smooth working of the federal judiciary.'" *Id.* at 1105 (quoting *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). Since these institutions cannot waive their rights when neither is a party to the case, we sometimes have considered abstention though raised tardily, or have raised that issue *sua sponte*. *But cf. Kleenwell Biohazard Waste & General Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 393–94 (9th Cir.1995) (refusing to consider abstention argument raised for first time on appeal because state, which was a party, effectively waived that argument by litigating case on the merits in the district court).

We see no valid reason why a party should belatedly be permitted to assert

Eleventh Amendment immunity. A party knows whether it purports to be an "arm of the state," and is capable of disclosing early in the proceedings whether it objects to having the matter heard in federal court. Timely disclosure provides fair warning to the plaintiff, who can amend the complaint, dismiss the action and refile it in state court, or request a prompt ruling on the Eleventh Amendment defense before the parties and the court have invested substantial resources in the case. Timely disclosure also facilitates discovery, when appropriate, and allows the parties to establish a full record for appellate review. Requiring the prompt assertion of an Eleventh Amendment defense also minimizes the opportunity for improper manipulation of the judicial process.

■ If a state or state agency elects to defend on the merits in federal court, it should be held to that choice the same as any other litigant. We find persuasive Justice Kennedy's thoughtful concurrence in *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 2055–56, 141 L.Ed.2d 364 (1998), which proposes a similar rule. To permit a defendant to litigate the case on the merits, and then belatedly claim Eleventh Amendment immunity to avoid an adverse result, would "work a virtual fraud on the federal court and opposing litigants." *Newfield House, Inc. v. Massachusetts Dep't of Pub. Welfare*, 651 F.2d 32, 36 n. 3 (1st Cir.1981).

■ Although the Eleventh Amendment defense arises from the Constitution, even constitutional rights can be waived if not timely asserted. A lack of personal jurisdiction implicates the Due Process Clause, yet that defense is waived if not promptly asserted. *See Insurance Corp. of Ireland*, 456 U.S. at 702–03, 102 S.Ct. 2099. Similarly, the Seventh Amendment right to a jury trial is waived unless affirmatively asserted within the narrow time limits established by Federal Rule of Civil Procedure 38(b).

## II.

BISM argues that binding Supreme Court precedent (1) requires an express waiver and (2) allows it to invoke the Eleventh Amendment for the first time at trial or even on appeal. We address each of these arguments in turn.

### 1. Express Waiver

■ A waiver of Eleventh Amendment immunity must unequivocally evidence the state's intention to subject itself to the jurisdiction of the federal court. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (waiver of sovereign immunity confined to suit in own courts unless state clearly evidences intent to allow suits in federal court). Similarly, Congressional intent to abrogate a state's Eleventh Amendment immunity must be "unmistakably clear in the language of the statute," so the courts may be "certain of Congress' intent," *id.* at 242–43, 105 S.Ct. 3142, and so the state has fair warning if it wishes to oppose that legislation.

■ Although the waiver must be unambiguous, we have never held that an express written waiver is invariably required. On the contrary, we have recognized that a state may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity. *See, e.g., Clark v. California*, 123 F.3d 1267, 1271 (9th Cir.1997) (state accepted funds which Congress expressly conditioned upon a waiver of sovereign immunity), *cert. denied sub nom. Wilson v. Armstrong*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998); *Premo v. Martin*, 119 F.3d 764, 769–71 (9th Cir. 1997) (by voluntarily agreeing to participate in arbitration proceedings, state waived immunity to a suit in federal court to enforce the arbitration award), *cert. denied*, —— U.S. ——, 118 S.Ct. 1163, 140 L.Ed.2d 174 (1998).

Although we have not had occasion to address the issue, other circuits have held

that when a state voluntarily invokes the jurisdiction of the federal court by commencing an action or removing a case to federal court, the state cannot later complain that it does not want to be in federal court after all. *See Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226 (10th Cir.1999) (by removing case to federal court, state unequivocally waived its immunity); *Dekalb County Div. of Family & Children Servs. v. Platter (In re Platter),* 140 F.3d 676, 680 (7th Cir.1998) (when state voluntarily enters federal forum by filing a claim, "it cannot run back to seek Eleventh Amendment protection when it does not like the result"); *Newfield House,* 651 F.2d at 36 n. 3 (state waived immunity by removing case to federal court).

Waiver also has been found when a state files a claim against a fund that is under the federal court's jurisdiction, as in bankruptcy cases. *See Gardner v. New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (when state "files a claim against [a] fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim"); *Georgia Dep't of Revenue v. Burke (In re Burke),* 146 F.3d 1313, 1319–20 (11th Cir. 1998) (by filing proofs of claim in bankruptcy case, state waived immunity and became subject to liability for violation of automatic stay and enforcement of discharge injunction), *cert. denied,* —— U.S. ——, 119 S.Ct. 2410, —— L.Ed.2d —— (1999) (No. 98–906); *995 Fifth Ave. Assocs., L.P. v. New York State Dep't of Taxation and Finance (In re 995 Fifth Ave. Assocs., L.P.),* 963 F.2d 503, 507–09 (2d Cir.1992) (by filing administrative expense claim for additional gains tax on transfer of property, state waived Eleventh Amendment immunity with respect to gains tax previously paid which debtor sought to recover).

Finally, a waiver of Eleventh Amendment immunity has been found when the state's conduct during the litigation clearly manifests acceptance of the federal court's jurisdiction or is otherwise incompatible with an assertion of Eleventh Amendment immunity. *See, e.g., Hankins v. Finnel,* 964 F.2d 853, 856–58 (8th Cir.1992) (state waived immunity by "seek[ing] to take advantage of the suit for its own benefit"); *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984) (defendants' conduct during litigation "indicates consent to this suit and an acceptance of the federal court's jurisdiction"); *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.,* 744 F.2d 880, 886 (1st Cir.1984) (where defendant not only appeared and defended on the merits but also filed a counterclaim and third-party complaint, court had "little trouble concluding that [it] voluntarily submitted to the jurisdiction of the federal court, thereby waiving any Eleventh Amendment immunity"); *In re Corporacion de Servicios Medico Hospitalarios de Fajardo,* 123 B.R. 4, 6–7 (Bankr.D.P.R.1991) (defendant waived any Eleventh Amendment immunity by waiting until the eve of trial to first raise defense, after having participated in extensive pretrial proceedings).

In *Fordyce v. City of Seattle,* 55 F.3d 436 (9th Cir.1995), we agreed that a state could "waive [its] Eleventh Amendment protection by voluntarily appearing and defending on the merits" provided "the State has been adequately notified of the pendency of the suit and of the particular matters at issue." *Id.* at 441. In such circumstances, there is little danger that the state will inadvertently waive its rights. If the state does not wish to be in federal court, the state can quickly make its objections known and obtain a ruling on that defense.

From the outset, BISM knew that this action had been filed in federal court, the identity of the plaintiff, the particular matters at issue, and the relief sought. BISM did not timely assert Eleventh Amendment immunity, but instead chose to defend on the merits and proceed to trial. By its conduct, BISM unequivocally evidenced its consent to the jurisdiction of the federal court. BISM could not belatedly withdraw that consent on the opening day of trial.

## 2. May be Raised at Any Time

BISM also contends that an Eleventh Amendment defense may be invoked for the first time at trial, or even on appeal, hence that defense was not waived by BISM's failure to assert it earlier in the proceedings.

## A. Nature of Eleventh Amendment Immunity

Eleventh Amendment immunity was traditionally characterized as a "personal privilege which [the state] may waive at [its] pleasure." *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *see also Missouri v. Fiske,* 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933). At one point, the Court briefly seemed to depart from that framework and treat the Eleventh Amendment as depriving the federal court of subject matter jurisdiction. *See Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (Eleventh Amendment defense "sufficiently partakes of the nature of a jurisdictional bar"). However, the Court has since returned to its original understanding of Eleventh Amendment immunity:

> The Eleventh Amendment ... does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Wisconsin Dep't of Corrections,* 118 S.Ct. at 2052 (citations omitted).

The "personal privilege" articulated in *Clark* most accurately describes Eleventh Amendment immunity. If the Eleventh Amendment truly restricts a federal court's subject matter jurisdiction, then a state could not waive that immunity and no court could ignore the defect. *See Insurance Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099. In *ITSI TV Prods., Inc. v. Agricultural Ass'ns,* 3 F.3d 1289 (9th Cir. 1993), we observed that Eleventh Amendment immunity "does not implicate a federal court's subject matter jurisdiction in any ordinary sense" and "may even be forfeited by the State's failure to assert it." *Id.* at 1291. We concluded that Eleventh Amendment immunity "should be treated as an affirmative defense." *Id.*

Once it is clear that the Eleventh Amendment is not a true limitation upon the court's subject matter jurisdiction, but rather a personal privilege that a state may waive, it is difficult to justify or explain a rule that allows this defense to be invoked at any time in the proceedings. Before 1945, it was generally acknowledged that a state waives its Eleventh Amendment immunity by litigating a case on the merits without timely objecting to the federal court's assertion of jurisdiction. *See, e.g., Gunter v. Atlantic Coast Line R.R.,* 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (Attorney General waived state's Eleventh Amendment immunity by defending on merits and not timely challenging federal court's jurisdiction); *Clark,* 108 U.S. at 447–48, 2 S.Ct. 878 (state submitted to jurisdiction of federal court by participating in litigation). *Cf. Fiske,* 290 U.S. at 24–25, 54 S.Ct. 18 (state's limited appearance asking federal court to refrain from adjudicating certain rights, and instead defer to decision of state court, did not constitute waiver of Eleventh Amendment immunity); *Georgia v. Jesup,* 106 U.S. 458, 462–63, 1 S.Ct. 363, 27 L.Ed. 216 (1882) (state preserved its claim to Eleventh Amendment immunity when it timely "avowed its unwillingness to submit its rights ... to the adjudication of any court of the United States").

This waiver doctrine was so well settled that in *Gunter,* the Court restated the "elementary proposition[ ]" that:

> Although a State may not be sued without its consent, such immunity is a privilege which may be waived, and hence where a State voluntarily becomes a party to a cause and submits its rights

for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.

*Gunter,* 200 U.S. at 283–84, 26 S.Ct. 252.

## B. *Ford Motor* and *Edelman*

In *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Court created some confusion by agreeing to consider the state's Eleventh Amendment argument "in this case" even though it had not been asserted below. *Id.* at 466–67, 65 S.Ct. 347. While that might imply that a state does not waive its immunity by appearing and defending on the merits without objecting to the federal forum, in the very next sentence the Court stated:

> It is conceded by the respondents that if it is within the power of the administrative and executive officers of Indiana to waive the state's immunity, *they have done so in this proceeding.* The issue thus becomes one of their power under state law to do so.

*Id.* at 467, 65 S.Ct. 347 (emphasis added). The Court then examined whether, under Indiana law, the Attorney General was authorized to waive the state's immunity, and decided that he was not. Consequently, the Court concluded "that no properly authorized executive or administrative officer of the state has waived the state's immunity to suit in the federal courts." *Id.* at 469, 65 S.Ct. 347.

The extensive discussion of the powers of the Indiana Attorney General to waive the state's immunity would have been superfluous if the Court had already determined, in the prior section of the opinion, that Indiana could not have waived its Eleventh Amendment immunity by defending on the merits without objection. Instead, the Court was addressing two distinct issues. One issue was whether the Court would even consider an argument asserted for the first time on appeal, which is a question every appellate court con-

fronts. *See, e.g., Marx v. Loral Corp.,* 87 F.3d 1049, 1055 (9th Cir.1996) (discussing circumstances in which we will consider arguments not raised before district court). The second issue was whether, by appearing and defending on the merits without objecting to the court's jurisdiction, Indiana had consented to the jurisdiction of the federal court and waived its Eleventh Amendment immunity. Resolution of the latter question turned upon the authority of the state's Attorney General under Indiana law. The Court's willingness to entertain Indiana's argument, even though asserted for the first time on appeal, did not establish an absolute rule that Eleventh Amendment immunity can never be waived by the failure to timely assert that defense. On the contrary, 14 years after *Ford Motor* the Court reiterated the traditional rule that a state waives its Eleventh Amendment immunity "by a general appearance in litigation in a federal court." *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

*Edelman* did not alter that rule. In *Edelman,* the Court briefly noted that the Eleventh Amendment defense had not been asserted in the trial court, but it was considered without objection by the Court of Appeals and the Supreme Court approved that resolution because "it has been well settled since the decision in *Ford Motor Co. v. Department of Treasury, supra,* that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court." *Edelman,* 415 U.S. at 677–78, 94 S.Ct. 1347.

That sweeping statement was dictum, since although the respondent argued that failure to raise the Eleventh Amendment in district court barred the petitioner from raising in the Court of Appeals or the Supreme Court, *see id.,* the parties had not previously objected to consideration of the issue by the Court of Appeals. *See Jordan v. Weaver,* 472 F.2d 985 (7th Cir. 1973). It also appears to overstate what

*Ford Motor* actually said, while overlooking the extensive discussion in that case of the Attorney General's authority to waive the state's immunity. Notwithstanding the assertion that the rule was "well settled," *Edelman* did not cite (and we have not found) any Supreme Court decision during the 29-year interval between *Ford Motor* and *Edelman* in which the Court stated that an Eleventh Amendment defense need not be raised in the trial court. Equally perplexing is *Edelman's* "sufficiently partakes of the nature of a jurisdictional bar" analysis, which might be considered the judicial equivalent of being "almost pregnant." Either the Eleventh Amendment limits the court's subject matter jurisdiction, in which case it can never be waived, or else it is not a jurisdictional bar. As noted above, post-*Edelman* decisions have reaffirmed that the Eleventh Amendment does not automatically deprive the federal court of subject matter jurisdiction. Rather, it is a "legal power to assert a sovereign immunity defense should [the state] choose to do so," and that defense is waived unless timely invoked. *Wisconsin Dep't of Corrections*, 524 U.S. 381, 118 S.Ct. at 2052.

In *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), decided the year after *Edelman*, the Court returned to the analysis it used in *Ford Motor*. Iowa had asserted an Eleventh Amendment defense in its answer, but thereafter did not assert that defense further:

> While the failure of the State to raise the defense of sovereign immunity in the District Court would not have barred Iowa from raising that issue in this Court ... [the state's failure to brief the issue has] left us without any guidance from the parties' briefs as to the circumstances under which Iowa law permits waiver of the defense of sovereign immunity by attorneys representing the State. Our own examination of Iowa precedents discloses, however, that the Iowa Supreme Court has held that the State consents to suit and waives any

defense of sovereign immunity by entering a voluntary appearance and defending a suit on the merits. The law of Iowa on the point therefore appears to be different from the law of Indiana treated in *Ford, supra.*

*Id.* at 396 n. 2, 95 S.Ct. 553 (citations omitted). The Court then addressed the merits of the appeal.

■ The rule we distill from these cases is that while an appellate court is not automatically barred from considering an Eleventh Amendment defense asserted for the first time on appeal, the question remains whether, by appearing and litigating the merits of the controversy without objection, the state has waived its Eleventh Amendment immunity and consented to the jurisdiction of the federal court in a particular case. They are two distinct issues.

We acknowledge that this conclusion differs from our treatment of this issue in *Mills Music, Inc. v. Arizona*, 591 F.2d 1278 (9th Cir.1979). In *Mills Music*, the defendants admitted jurisdiction in their answer, defended on the merits, and interposed an Eleventh Amendment defense only after losing at trial. We reluctantly read *Edelman* to mean that a litigant does not waive its Eleventh Amendment immunity "merely by appearing in an action, defending upon the merits, and failing to interpose the Eleventh Amendment offense [sic]," although we expressed doubts about that result and suggested that a rule providing "that the failure to interpose the defense would result in a waiver appears preferable." *Id.* at 1282 n. 6.

■ "[W]hen existing Ninth Circuit precedent has been undermined by subsequent Supreme Court decisions, this court may reexamine that precedent without the convening of an *en banc* panel." *Le Vick v. Skaggs Cos.*, 701 F.2d 777, 778 (9th Cir.1983). We conclude that our resolution of the waiver issue in *Mills Music* placed undue reliance upon the *Edelman* dictum, and does not reflect

the present state of Eleventh Amendment jurisprudence as exemplified by *Sosna* and *Wisconsin Dep't of Corrections, supra.* Indeed, our recent decisions often have focused on whether the state timely asserted its Eleventh Amendment defense. For instance, in *Gamboa v. Rubin,* 80 F.3d 1338 (9th Cir.), *vacated on other grounds sub nom. Gamboa v. Chandler,* 101 F.3d 90 (9th Cir.1996) (en banc), we concluded that Hawaii had not waived its Eleventh Amendment immunity, emphasizing that the state specifically asserted that defense in its answer to the complaint. *Id.* at 1350. Similarly, in *Ashker v. California Dep't of Corrections,* 112 F.3d 392 (9th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 168, 139 L.Ed.2d 111 (1997), we found no waiver where the state asserted its Eleventh Amendment defense in its answer to the complaint and pretrial statement. *Id.* at 393–94. In both cases, whether the state had preserved this defense in its answer would have been irrelevant if the state could simply assert the Eleventh Amendment for the first time on appeal without fear of waiver.

## CONCLUSION

We hold that BISM unequivocally consented to the jurisdiction of the federal court by its conduct in appearing and actively litigating this case on the merits, while waiting until the opening day of trial to first assert immunity under the Eleventh Amendment.

We emphasize that our decision in this case does not diminish the rights afforded to the states under the Eleventh Amendment. Apart from those limited exceptions previously recognized by the Supreme Court, a state may not be sued in federal court by a private citizen without that state's consent. However, like every other defendant, a state must timely object to the forum or be deemed to have waived

its objections. The Eleventh Amendment was never intended to allow a state to appear in federal court and actively litigate the case on the merits, and only later belatedly assert its immunity from suit in order to avoid an adverse result.

**AFFIRMED.**