209 F.3d 1111 (9th Cir. 2000)
 In re: HARRY H. MITCHELL;JUNE M. MITCHELL,Debtors.
HARRY H. MITCHELL; JUNE M. MITCHELL, OPINION Appellants,
v.
FRANCHISE TAX BOARD,STATE OF CALIFORNIA;BOARD OF EQUALIZATION,STATE OF CALIFORNIA,Appellees.
 No. 98-56475
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 3, 1999
Submission Vacated November 8, 1999
Resubmitted March 14, 2000
Filed April 21, 2000
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 COUNSEL: Harry H. Mitchell, Palm Desert, California, appellant pro se.
 David S. Chaney, Deputy Attorney General, Los Angeles, California, for the appellees.
 Appeal from the Bankruptcy Appellate Panel for the Ninth Circuit; Lawrence Ollason, Philip H. Brandt, and James W. Meyers, Bankruptcy Judges, Presiding. BAP No. CC-97-01350 OlBrMe
 Before: James R. Browning and A. Wallace Tashima, Circuit Judges, and Samuel P. King,* District Judge.
 TASHIMA, Circuit Judge:
 
 
 1
 Harry and June Mitchell ("Mitchells") filed an adversary complaint in their bankruptcy case against the California Franchise Tax Board ("FTB") and the California Board of Equalization ("Board") (together, the "State") to determine the amount and dischargeability of taxes owed to the State. The Mitchells also asserted state and federal claims, alleging, inter alia, violations of the Fourteenth Amendment. The Mitchells appeal the Bankruptcy Appellate Panel's ("BAP") affirmance of the bankruptcy court's dismissal of all claims for lack of jurisdiction on the basis of state sovereign immunity under the Eleventh Amendment of the United States Constitution. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 158(d) and affirm the decision of the BAP.
 
 I.
 
 2
 The Mitchells filed a voluntary Chapter 7 bankruptcy petition in bankruptcy court in late 1995. The Mitchells listed the FTB as one of their creditors to whom they owed approximately $300,000 in state income taxes and interest. The FTB did not file a proof of claim in the Mitchells' bankruptcy proceedings. In February 1996, the bankruptcy court issued a general discharge order as to all pre-petition debts.
 
 
 3
 In March 1997, the Mitchells filed their first amended complaint against the FTB and the Board in bankruptcy court to: (i) Determine the amount and dischargeability of their debt to the FTB ("Count 1"); (ii) Assert claims of common law fraud and violations of the California Revenue and Taxation Code ("Count 2"); and (iii) Claim violations of due process and equal protection under the Fourteenth Amendment ("Count 3"). The State defended against all counts by asserting failure to state a claim. Specifically, the State answered Count 1 of the complaint by admitting the tax debt was discharged pursuant to the terms of the bankruptcy court's order, but denied the allegation that the debt was dischargeable under the Bankruptcy Code. The State answered Counts 2 and 3 by asserting Eleventh Amendment sovereign immunity. In April 1997, the State enlarged its assertion of Eleventh Amendment immunity to include Count 1 by filing a motion to dismiss all claims for lack of jurisdiction.
 
 
 4
 The bankruptcy court, relying upon Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), dismissed the case for lack of jurisdiction. The BAP affirmed, Mitchell v. California Franchise Tax Bd., 222 B.R. 877, 881-82 (B.A.P. 9th Cir. July 15, 1998) (holding that although Congress expressed its intent to abrogate Eleventh Amendment immunity in 11 U.S.C. S 106(a), it could not do so under Seminole Tribe). The BAP found that S 106(a) was passed pursuant to the Bankruptcy Clause of Article I, which does not provide Congress with abrogation power, as opposed to the Fourteenth Amendment, S 5, which does. See id. Additionally, the panel noted that: (i) Count 1 of the Mitchells' complaint was a "suit" for Eleventh Amendment purposes; (ii) The State did not waive its immunity by admitting the tax debt was discharged or by amending its answer; (iii) Application of Seminole Tribe was not retroactive because the Mitchells' amended complaint was filed after Seminole Tribe was decided; and (iv) The State was immune from the Mitchells' Fourteenth Amendment due process and equal protection claims. See id. at 882-88.
 
 II.
 
 5
 We review decisions of the BAP de novo. See Arden v. Motel Partners (In re Arden), 176 F.3d 1226, 1227 (9th Cir. 1999). In other words, we independently review the bankruptcy court's rulings on appeal from the BAP. See Tuli v. Republic of Iraq (In re Tuli), 172 F.3d 707, 709 (9th Cir. 1999). Jurisdictional issues in bankruptcy, including sovereign immunity assertions, are also reviewed de novo. See Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.), 90 F.3d 1472, 1475 (9th Cir. 1996). The bankruptcy court's findings of fact are reviewed for clear error. See Ardmor Vending Co. v. Kim (In re Kim), 130 F.3d 863, 865 (9th Cir. 1997).
 
 III.
 
 6
 Under the Eleventh Amendment,[1] a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state. See College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219, 2223 (1999); Seminole Tribe, 517 U.S. at 64-68.
 
 A.
 
 7
 The Mitchells first contend that they have not commenced a "suit" against the State. By its terms, the Eleventh Amendment only provides immunity in "suit[s] in law or equity." Courts have found that certain bankruptcy proceedings do not constitute "suits" in the Eleventh Amendment sense. In Texas v. Walker, 142 F.3d 813, 820-22 (5th Cir. 1998), cert. denied, 119 S. Ct. 865 (1999), for example, the Fifth Circuit found that a discharge order concerning a debt owed to a state does not constitute a suit where the state is neither a defendant nor listed as a creditor. Similarly, in Virginia v. Collins (In re Collins), 173 F.3d 924, 929 (4th Cir. 1999), cert. denied, 120 S. Ct. 785 (2000), the court found that there was no Eleventh Amendment suit where the debtors asked for their bankruptcy case to be reopened -but did not directly sue the state -for a determination that certain debts owed the state were discharged pursuant to a previous discharge order.
 
 
 8
 The Walker court noted, however, that "commencement of certain adversary proceedings directly against a state that has not filed a proof of claim in a bankruptcy case would" come within the scope of the Eleventh Amendment. Walker, 142 F.3d at 823; see also Maryland v. Antonelli Creditor's Liquidating Trust, 123 F.3d 777, 786-87 (4th Cir. 1997) (holding that while an original bankruptcy proceeding where "[t]he state is not named [as] a defendant" is not a suit, "an adversary proceeding" directly against the state would be).
 
 
 9
 The Mitchells' contention that Count 1 did not rise to the level of an Eleventh Amendment suit must fail, because they instituted an adversary proceeding directly against the State.[2] In order to resolve their complaint, the Bankruptcy Court must make a separate determination specifically binding on the State as to whether particular debts owed to the State were discharged. See 28 U.S.C. S 157(b)(2)(I) (actions to determine the "dischargeability of particular debts" are within core bankruptcy jurisdiction).
 
 
 10
 Although the Mitchells argue that Count 1 is "essentially a petition," the complaint particularly requests a determination of dischargeability with respect to "all defendants," including the FTB and the Board. Such a determination entails the exercise of in personam jurisdiction over the State in contrast to the bankruptcy court's general in rem jurisdiction over the property of the estate. See Collins, 179 F.3d at 930 (distinguishing "jurisdiction over the debtor and his estate" from "bankruptcy court jurisdiction over the state"). Unlike a general discharge order, in the present case, a summons was served on the State, such that it was required to respond to the Mitchells' complaint. See NVR Homes, Inc. v. Clerks of the Circuit Courts (In Re NVR), 189 F.3d 442, 451 (4th Cir. 1999) (utilizing "coercion . . . to attend" and the requirement of "jurisdiction over the state" as factors in analyzing whether a proceeding constituted a "suit " under the Eleventh Amendment), cert. denied, 120 S. Ct. 936 (2000); cf. Collins, 173 F.3d at 929 ("The Commonwealth .. . was not named as a defendant, was not served with process, and was not compelled to appear in bankruptcy court.").
 
 
 11
 The Mitchells further argue that because they did not request affirmative monetary relief, there is no suit. While courts generally construe "action leading to an order forcing a payment to citizens [as] the quintessential`suit' under theEleventh Amendment," In re NVR Homes, 189 F.3d at 453, this factor is not dispositive. See id.; Morrell v. Franchise Tax Bd. (In re Morrell), 218 B.R. 87, 89-90 (Bankr. C.D. Cal. 1997) (holding debtor's complaint to determine dischargeability of tax debt barred by Eleventh Amendment).
 
 
 12
 Moreover, a decision in favor of the Mitchells would effectively prevent the State from collecting monies otherwise due to it, and it is difficult to draw a rational distinction between a bankrupt's attempt to recover funds already paid to the state from one that seeks to discharge present debts to the state. Finally, suits only requesting non-monetary relief do not divest the state of its immunity. See Seminole Tribe, 517 U.S. at 58 ("The Eleventh Amendment does not exist solely in order to `preven[t] federal-court judgments that must be paid out of a State's treasury . . . .' ") (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (holding that the Eleventh Amendment applies "regardless of the nature of the relief sought"). This principle reinforces the notion that we should not rely too heavily upon whether a money judgment is sought in determining whether a "suit" exists in the first instance.[3]
 
 
 13
 In sum, because the outcome of the Mitchells' complaint would coercively affect the legal position of the State via federal court jurisdiction, the proceedings constitute a "suit" within the scope of the Eleventh Amendment. See Missouri v. Fiske, 290 U.S. 18, 26-27 (1933) (finding that a suit for Eleventh Amendment purposes involves " `process sued out by [the] individual against the state, for the purpose of establishing some claim against it by the judgment of a court' ") (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 407, 408 (1821) (Marshall, C.J.)).
 
 B.
 
 14
 The Mitchells next argue that the State waived its immunity with respect to Count 1, because it did not immediately assert immunity with respect to that count and admitted that the debt was discharged. In general, sovereign immunity is jurisdictional in nature and may be asserted at any time. See Treasure Salvors, 458 U.S. at 683 n.18 ("The fact that the State appeared and offered defenses on the merits does not foreclose consideration of the Eleventh Amendment issue; `the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar' that it may be raised at any point of the proceedings.") (quoting Edelman v. Jordan, 415 U.S. 651, 678 (1974)); California Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1048 (9th Cir. 1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings . . . ."). Furthermore, a state must "unequivocally express[ ] its consent to federal jurisdiction." In re Jackson, 184 F.3d at 1049. "Accordingly, our `test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.' " College Savs. Bank, 119 S. Ct. at 2226 (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)).
 
 
 15
 In Hill v. Blind Indus. and Servs., 179 F.3d 754 (9th Cir. 1999), we held that, by defending on the merits and failing to assert its Eleventh Amendment immunity until the opening day of trial, a Maryland agency ("BISM") had waived its immunity. The Hill court reasoned:
 
 
 16
 By waiting until the first day of trial, BISM hedged its bet on the trial's outcome. Rather than send jurors and witnesses home while the parties briefed and argued the merits of BISM's Eleventh Amendment defense, the trial court properly took the motion under advisement and proceeded with trial. BISM thus had the best of both worlds. . . . The integrity of the judicial process is undermined if a party, unhappy with the trial court's rulings or anticipating defeat, can unilaterally void the entire proceeding and begin anew in a different forum.
 
 
 17
 Id. at 756-57.
 
 
 18
 The facts of this case, however, are distinguishable from those in Hill. Here, the State immediately asserted its immunity as to Counts 2 and 3 and asserted immunity as to Count 1 less than one month after the first amended complaint was filed. Furthermore, the State did not unambiguously admit liability on Count 1, as the Mitchells contend. Rather, while the State admitted in its answer that the Mitchells' "alleged debt to defendant FTB was discharged in the Discharge Order of the Bankruptcy Court," it also separately denied that the FTB's claim was discharged and denied that the debt was dischargeable under the Bankruptcy Code.
 
 
 19
 Even if the State had admitted the debt was discharged, this is not equivalent to "a clear declaration of the state's intention" to waive its immunity. Edelman, 415 U.S. at 673 (internal quotation marks and citations omitted). A party may have clear duties under the law, yet simultaneously be immune from suit. Nor does it appear that the "integrity of the judicial process" was in any manner undermined by the State's subsequent assertion of immunity as it was in Hill. 179 F.3d at 756-57.
 
 
 20
 Finally, because the State did not file a proof of claim in either case, it did not waive its immunity under 11 U.S.C. S 106(b). Cf. In re Jackson, 184 F.3d at 1050 (finding that a state waived its Eleventh Amendment immunity when it filed a proof of claim).
 
 C.
 
 21
 Congress may abrogate state sovereign immunity in federal court if, "pursuant to a valid exercise of power, [it] unequivocally expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985), quoted in Seminole Tribe, 517 U.S. at 55. Congress has clearly expressed its intent to abrogate state sovereign immunity in S 106(a), which provides in relevant part that "[n]othwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit" with respect to proceedings brought to determine (1) tax liability under 11 U.S.C. S 105 and (2) dischargeability of debts under 11 U.S.C. S 523.[4] See Sacred Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.), 133 F.3d 237, 243 (3d Cir. 1998) (finding clear expression of abrogation in S 106(a)); Department of Transp. & Dev. v. PNL Asset Mgt. Co. (In re Fernandez), 123 F.3d 241, 243 (5th Cir.) (same), amend. on denial of reh'g, 130 F.3d 1138 (1997); Schlossberg v. Maryland (In re Creative Goldsmiths), 119 F.3d 1140, 1144-45 (4th Cir.) (same), cert. denied, 523 U.S. 1075 (1998). Thus, the crucial issue is whether Congress acted within the scope of its power in enactingS 106(a).
 
 
 22
 In Seminole Tribe, the Supreme Court held that Congress may not abrogate state sovereign immunity under its Article I powers. See 517 U.S. at 72-73; see also Florida Prepaid, 119 S. Ct. at 2205 ("Seminole Tribe makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers . . . ."). Florida Prepaid, which held that Congress cannot abrogate sovereign immunity under the Patent Clause of Article I, reaffirms that there is no exception to Seminole Tribe for exclusively federal powers, even those involving exclusive federal jurisdiction.[5] See id.; see also Sofamore Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 (9th Cir. 1997) (finding no exception to Seminole Tribe for exclusively federal powers). In short, there is no policy-based exception -such as national uniformity -to the Seminole Tribe rule that Congress may not abrogate state immunity from suit under Article I. See Seminole Tribe , 517 U.S. at 7273; In re Creative Goldsmiths, 119 F.3d at 1145-46.
 
 
 23
 In Seminole Tribe, however, the Court reaffirmed its holding in Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), that Congress may abrogate immunity pursuant to its enforcement powers under S 5 of the Fourteenth Amendment. See Seminole Tribe, 517 U.S. at 58-60. Congress, though, may only pass "appropriate" legislation pursuant toS 5; in particular, Congress must enforce a right protected under the Fourteenth Amendment, as well as exercise its power in a "remedial" manner. Florida Prepaid, 119 S. Ct. at 2206 (quoting City of Boerne v. Flores, 521 U.S. 507, 519 (1997)) (internal quotation marks omitted).
 
 
 24
 Section 106(a) has been viewed by most courts addressing the issue as having been passed pursuant to the Bankruptcy Clause of Article I. See In re Sacred Heart Hosp., 133 F.3d at 244 (finding S 106(a) not to be passed pursuant to the Fourteenth Amendment and cataloguing the numerous courts that have so found). Congress need not, however, specifically cite its source of power when legislating pursuant to the Fourteenth Amendment, S 5. See EEOC v. Wyoming, 460 U.S. 226, 243 n.18 (1983), cited in Oregon Short Line R.R. v. Department of Revenue, 139 F.3d 1259, 1266 (9th Cir. 1998). Furthermore, because a determination of the amount and dischargeability of a debt concerns the "property of the estate," 11 U.S.C. S 541, these claims arguably involve a right protected by the Due Process Clause.[6] But see In re Creative Goldsmiths, 119 F.3d at 1146-47 (expressing the view that such an approach "would justify every federal enforcement scheme as a requirement of due process"); United States v. Nebraska (In re Doiel), 228 B.R. 439, 446 (D.S.D. 1998) (rejecting a due process-based argument for abrogation).
 
 
 25
 We need not determine, however, whether S 106(a) was passed to enforce a protection afforded by the Fourteenth Amendment, because S 106(a) is not remedial, and thus was not an appropriate exercise of Congress's enforcement powers (even if Congress had intended it to be). In order to be an appropriate exercise of its remedial powers, congressional abrogation of Eleventh Amendment immunity underS 5 of the Fourteenth Amendment must be "congruen[t ] and proportional[ ] between the injury to be prevented or remedied and the means adopted to that end." Florida Prepaid, 119 S. Ct. at 2206 (quoting City of Boerne, 521 U.S. at 519-20) (internal quotation marks omitted); see also Dare v. California, 191 F.3d 1167, 1173 (9th Cir. 1999).
 
 
 26
 Congruence requires "identification of the `Fourteenth Amendment evil or wrong that Congress intend[s] to remedy,' using historical experience as a reference point. " Dare, 191 F.3d at 1174 (quoting Florida Prepaid, 119 S. Ct. at 2207 (internal quotation marks and citations omitted)). In particular, Congress must identify a "pattern of constitutional violations" by the states. Florida Prepaid, 119 S. Ct. at 2207. Once that pattern has been identified, proportionality "requires consideration of whether the provisions of the [abrogation] statute are proportional to their remedial or preventive goal." Dare, 191 F.3d at 1174 (citing Florida Prepaid, 199 S. Ct. at 2210).
 
 
 27
 In both the original and amended version of S 106(a),[7] Congress made no findings that states had been engaging in a pattern of constitutional violations of federal bankruptcy law. See H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; H.R. Rep. No. 103-835, at 42 (1994). Until Congress makes findings of a pattern of state violations and passes legislation that is proportional to its remedial aims, S 106(a) must be viewed as an unconstitutional assertion of Congress's power, because it fails the congruence requirement of City of Boerne.[8]See In re Fernandez, 123 F.3d at 245 ("[T]here is no indication that Congress passed the 1994 Act to remedy any incipient breaches or even some unarticulated, general violation of the rights specified in S 1 of the Fourteenth Amendment.").
 
 D.
 
 28
 The Mitchells additionally argue that states are not entitled to immunity for claims directly under the Fourteenth Amendment, S 1, or for violations by states of the Supremacy Clause. Supreme Court case law is clear, however, that there are only two means by which a state loses its immunity in federal court: waiver and abrogation. See College Savs. Bank, 119 S. Ct. at 2223 ("[W]e have recognized only two circumstances [i.e., waiver and abrogation] in which an individual may sue a State."). Indeed, the basic rationale behind the Ex Parte Young doctrine[9] is to allow parties to enforce their federal rights in state or federal court by suing government officials for prospective relief, because the state itself cannot be sued without its consent. See Alden v. Maine, 119 S. Ct. 2240, 2262-63 (1999) (citing General Oil v. Crain, 209 U.S. 211 (1908)); Pennhurst, 465 U.S. at 104-05.
 
 
 29
 Granted, as the Mitchells note, "through the Fourteenth Amendment, federal power extend[s] to intrude upon the province of the Eleventh Amendment . . . ." Seminole Tribe, 517 U.S. at 58-60. Nonetheless, the Supreme Court has never held that private parties may sue states without Congress first passing implementing legislation under the Fourteenth Amendment, S 5. Indeed, Seminole Tribe continues its discussion of the Fourteenth Amendment's "intru[sion] upon the province of the Eleventh Amendment" by stating that "therefore . . . S 5 of the Fourteenth Amendment allow[s] Congress to abrogate the immunity from suit guaranteed by that Amendment." Id. at 59 (emphasis added); see Pennhurst, 465 U.S. at 99-100, 119-121 (citing Quern v. Jordan, 440 U.S. 332, 342 (1979) (holding that suits under 42 U.S.C. S 1983 do not override state immunity)).[10]
 
 
 30
 Similarly, the Supremacy Clause dictates that federal law trumps state law, but does not itself abrogate state sovereign immunity in federal court: although a state may be bound by federal law, a private party is not entitled to utilize a federal court to determine a state's obligations. See Alden, 119 S. Ct. at 2255 ("The Constitution, by delegating to Congress the power to establish the supreme law of the land .. . does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State itself but from the national power.").
 
 E.
 
 31
 The Mitchells lastly contend that Seminole Tribe was impermissibly applied retroactively to bar their claims. By the time the Mitchells commenced their suit against the State, however, Seminole Tribe had already been decided; further, " `a court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only.' " Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203 (1988) (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379-80 (1981)). Although the FTB was named as a creditor in the Mitchells' initial bankruptcy filing and the discharge order was entered prior to Seminole Tribe , the present issue is not whether the discharge order bound the State (on which we do not express an opinion), but whether the bankruptcy court could exercise jurisdiction over the suit filed by the Mitchells against the State to determine the amount and dischargeability of their debts. Thus, the earliest possible time to determine jurisdiction was when the Mitchells filed their complaint against the State, which was post-Seminole Tribe.
 
 IV.
 
 32
 Under Seminole Tribe, Congress cannot abrogate state sovereign immunity pursuant to Article I of the United States Constitution. Furthermore, in enacting S 106(a), even assuming Congress acted pursuant to the Fourteenth Amendment, S 5, it did not satisfy the congruence requirement of City of Boerne. Thus, we conclude that Congress did not act within the scope of its abrogation power in enacting S 106(a). The Mitchells' additional claims are also without merit.
 
 
 33
 For the foregoing reasons, the decision of the BAP is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.
 
 
 [1]
 The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 U.S. Const. amend XI. The amendment has been interpreted as applying to suits against a state by its own citizens. See Hans v. Louisiana, 134 U.S. 1, 15 (1890). The amendment also bars suits against state agencies. See Florida Dep't of State v. Treasure Salvors, Inc. , 458 U.S. 670, 684 (1981).
 
 
 [2]
 The Mitchells do not contend that Counts 2 or 3 are not Eleventh Amendment suits.
 
 
 [3]
 In Ranstrom v. IRS (In re Ranstrom), 215 B.R. 454 (Bankr. N.D. Cal. 1997), the bankruptcy court held that a discharge proceeding was not a "suit" for Eleventh Amendment purposes. The reasoning of that case, however, has been severely undercut by Seminole Tribe and Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savs. Bank, 119 S. Ct. 2199 (1999).
 
 
 [4]
 The Mitchells rely on their argument that a state has no immunity with respect to suits filed directly under the Fourteenth Amendment, S 1, to assert Counts 2 and 3.
 
 
 [5]
 See 28 U.S.C. S 1338(a) (vesting exclusive jurisdiction over patent cases in federal courts).
 
 
 [6]
 Additionally, once Congress confers a statutory benefit, that benefit is protected by the Due Process Clause (even if Congress could otherwise completely withhold the interest). See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).
 
 
 [7]
 In response to United States v. Nordic Village, Inc., 503 U.S. 30 (1992), and Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 104 (1989), Congress amended 11 U.S.C.S 106 in 1994 to make the wording of the statute a clear expression of abrogation. See Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994); H.R. Rep. No. 103-835, at 42 (1994), reprinted in 1994 U.S.C.C.A.N. 3336, 3350-51.
 
 
 [8]
 If it cannot satisfy the congruence requirement, the legislation must of necessity fail the proportionality requirement, because there are no findings of state constitutional violations to be remedied. See Florida Prepaid, 119 S. Ct. at 2210.
 
 
 [9]
 Ex Parte Young, 209 U.S. 123 (1908).
 
 
 [10]
 Pennhurst also held that pendent (now supplemental) claims under state law are barred by the Eleventh Amendment, thereby precluding Count 2 of the Mitchells' complaint. See Pennhurst, 465 U.S. at 120-21.