OPINION
 

 TALLMAN, Circuit Judge.
 

 We must decide whether the State of Arizona waived any sovereign immunity it might have had available to it and consented to suit in a federal bankruptcy court adversary proceeding. We hold that the State made a tactical decision to waive its immunity in this instance and that the debtor’s obligation to the State was properly discharged. We therefore affirm.
 

 I
 

 Kathryn Bliemeister (Bliemeister) and her former husband owned a mechanic’s shop. On October 8, 1993, Raymond Cole, Jr., began working at the shop as a new employee. Within a few hours of starting his employment, Cole lost part of his finger in an accident. Because Bliemeister’s business did not have workers’ compensation insurance, as required by Arizona Revised Statutes § 23-961, Cole applied to the Industrial Commission of Arizona (ICA) for medical benefits and partial disability compensation, which he subsequently received. The State later sought reimbursement from Bliemeister for money paid to Cole, plus penalties, totaling $9,273.22, per its Final Award, dated September 13, 1996.
 

 The State requested payment from Bliemeister in a letter dated October 7, 1998. Approximately three weeks later, Bliemeister petitioned for Chapter 7 bankruptcy relief, listing ICA as a creditor.
 

 After the bankruptcy court ordered various debts discharged, Bliemeister sought to have the court determine the dischargeability of the ICA claim. The State responded by filing a limited response contending that determinations of dischargeability are made in adversary proceedings that must be initiated by a complaint. Bliemeister filed a proper complaint, which the State answered. Both the State and Bliemeister then filed motions for summary judgment. The State did not claim sovereign immunity in its motion for summary judgment but rather argued that the debt was not dis-chargeable. The bankruptcy court heard oral argument on May 31, 2000, orally announced its preliminary leanings, and requested supplemental briefing on what constitutes a “transaction” under 11 U.S.C. § 507(a)(8)(E)(ii). Contemporaneously with its filing of the supplemental briefing, the State filed a motion to dismiss the complaint for the first time and claimed sovereign immunity.
 

 The bankruptcy court held that “sovereign immunity is not assertable in a bankruptcy case governed by federal law. Congress did not need to adopt 11 U.S.C. § 106, because the states’ sovereignty had been abrogated in the original Constitution once the federal government elected to enact bankruptcy laws.”
 
 Bliemeister v. Industrial Comm’n of Arizona (In re Bliemeister),
 
 251 B.R. 383, 391-92 (Bankr.D.Ariz.2000). It also held that the State had waived its sovereign immunity in this case.
 
 See id.
 
 at 393. The court then held that the “transaction” under 11 U.S.C. § 507(a)(8)(E)(ii) occurred on the date of Cole’s injury, and because that was more than three years before Bliemeister filed her Chapter 7 petition, the debt owed was dischargeable.
 
 See id.
 
 at 396. The court also granted Bliemeister’s cross-motion for
 
 *861
 
 summary judgment based on collateral es-toppel.
 

 The district court affirmed, finding that the State’s decision not to raise sovereign immunity immediately “was clearly a tactical decision.” Having found that the State waived sovereign immunity, the district court held the issue of whether it had “Eleventh Amendment immunity from a suit brought in bankruptcy court [to be] moot.” It affirmed the bankruptcy court’s ruling that the transaction occurred on the date of the injury so that the debt was dischargeable and declined to address the cross-motion raising collateral estoppel.
 

 We have jurisdiction over the appeal under 28 U.S.C. § 158(d).
 

 II
 

 We review de novo the decision of a district court from an appeal of a bankruptcy court.
 
 See Neilson v. Chang (In re First T.D. & Inv.),
 
 253 F.3d 520, 526 (9th Cir.2001). We also review de novo sovereign immunity assertions in bankruptcy proceedings.
 
 See Mitchell v. Franchise Tax Bd. (In re Mitchell),
 
 209 F.3d 1111, 1115 (9th Cir.2000).
 

 Sovereign immunity is quasi-jurisdictional in nature. It may be forfeited where the state fails to assert it and therefore may be viewed as an affirmative defense.
 
 See Hill v. Blind Indus. & Servs.,
 
 179 F.3d 754, 760 (9th Cir.1999),
 
 amended by
 
 201 F.3d 1186 (9th Cir.2000). The test employed to determine whether a state has waived immunity “is a stringent one.”
 
 Mitchell,
 
 209 F.3d at 1117. A state generally waives its immunity when it “voluntarily invokes [federal] jurisdiction or ... makes a ‘clear declaration’ that it intends to submit itself to [federal] jurisdiction.”
 
 Schulman v. California (In re Lazar),
 
 237 F.3d 967, 976 (9th Cir.2001). Express waiver is not required; a state “waive[s] its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.”
 
 Hill,
 
 179 F.3d at 758.
 

 In
 
 Hill v. Blind Industries & Services,
 
 we found that the State of Maryland waived its Eleventh Amendment immunity when it moved to dismiss for lack of personal jurisdiction; answered a complaint; moved to dismiss by alleging the amount in controversy was not sufficient to grant jurisdiction in a diversity suit; filed a consent to have a magistrate try the case; conducted discovery; participated in a pretrial conference; and “filed trial materials including witness and exhibit lists, proposed jury instructions, and a trial memorandum.”
 
 Id.
 
 at 756. In fact, Maryland waited until the opening day of trial to assert that the Eleventh Amendment barred the action.
 
 See id.
 
 In finding waiver, we reasoned that the State “hedged its bet on the trial’s outcome” and that “[s]uch conduct undermines the integrity of the judicial system ... wastes judicial resources, burdens jurors and witnesses, and imposes substantial costs upon the litigants.”
 
 Id.
 

 We found no waiver of sovereign immunity, however, in
 
 Mitchell v. Franchise Tax Board.
 
 In that case, debtors filed a three-count amended adversary complaint against the State of California after a bankruptcy court had discharged the debtors’ pre-petition debts. . The State answered the first claim by arguing that the debt was not dischargeable under the bankruptcy code. It answered the second and third claims by asserting sovereign immunity under the Eleventh Amendment. Less than a month later, the State asserted its sovereign immunity with respect to the first claim and filed a motion to dismiss all claims based on a lack of jurisdiction.
 
 See
 
 209 F.3d at 1114-15. We distinguished
 
 Hill
 
 by stating that in answering
 
 *862
 
 Count 1 the State did not give a “clear declaration” of its intent to waive sovereign immunity.
 
 Id.
 
 at 1118. We also noted that in
 
 Mitchell
 
 the “integrity of the judicial process” had not been undermined as it had been in
 
 Hill. Id.
 

 We must now decide whether there was waiver in this case where the State of Arizona did not participate as fully as the State of Maryland in
 
 Hill
 
 but did not assert sovereign immunity as promptly as the State of California in
 
 Mitchell.
 
 We hold that given its level of participation, the State of Arizona waived any sovereign immunity available to it in this instance. The State filed a limited response contending that a determination of dischargeability must be made in an adversary proceeding that is initiated by filing a complaint. Thereafter, it answered Bliemeister’s properly filed complaint. It did not raise an immunity defense at that time or when it first filed its motion for summary judgment. It attended the bankruptcy court’s oral hearing on May 31, 2000, and argued the merits of the case. It heard the court announce its preliminary leanings, which were initially unfavorable to the State, and request supplemental briefing on what constitutes a “transaction.” Still, Arizona never asserted its sovereign immunity until it filed a motion to dismiss at the same time it filed the requested supplemental briefing.
 

 We agree with the district court’s conclusion that the State’s delay in asserting immunity “was clearly a tactical decision.”
 
 [1]
 
 Finding waiver is appropriate here because the State benefitted from hearing the bankruptcy court’s leanings. To allow a state to assert sovereign immunity after listening to a court’s substantive comments on the merits of a case would give the state an unfair advantage when litigating suits.
 

 Our holding is consistent with the spirit of a recent unanimous decision by the Supreme Court. In
 
 Lapides v. Bd. of Regents
 
 , — U.S.-,-, 122 S.Ct. 1640, 1645, 152 L.Ed.2d 806 (2002), the Court held that a state that removes a case to federal court waives its immunity defense because of concerns about letting states have unfair tactical advantages by invoking federal jurisdiction and then subsequently challenging that jurisdiction. Here, the State of Arizona made a tactical decision to argue the merits of the case. When it perceived it was losing the argument, it attempted to try a new approach and claim immunity from suit. While Arizona did not wait until the day of trial, as was the case in
 
 Hill,
 
 our reasoning in
 
 Hill
 
 still applies. Once again, we see that a state “hedged its bet on the ... outcome.”
 
 Hill,
 
 179 F.3d at 756. Because “[s]uch conduct undermines the integrity of the judicial system[,]” we hold that the State of Arizona waived any sovereign immunity it had available to it.
 
 [2]
 

 Id.
 

 
 *863
 
 III
 

 The merits of the case are easily resolved. Determining when a “transaction” pursuant to 11 U.S.C. § 507(a)(8)(E)(ii) occurs for purposes of determining the dischargeability of an excise tax assessed against an employer who fails to carry workers compensation insurance was not clear at the time the bankruptcy court decided this case. It is now. We subsequently approved of the bankruptcy court’s holding in
 
 Deroche v. Arizona Industrial Commission (In re Deroche),
 
 287 F.3d 751 (2002). We held that a “ ‘transaction’ is the act of employing a worker without carrying the required insurance when the worker is injured. The date of the transaction is thus the date on which the worker is injured.”
 
 Id.
 
 at 757.
 

 Cole injured himself on his first day of employment, October 8, 1993. Bliemeister petitioned for Chapter 7 bankruptcy relief on October 29, 1998. Because Cole’s injury occurred more than three years before Bliemeister petitioned for bankruptcy, the claim was properly discharged.
 
 [3]
 

 See
 
 11 U.S.C. § 607(a)(8)(E)(ii).
 

 IV
 

 The State of Arizona waived any immunity available to it. Bliemeister’s debt to the State, which was more than three years old at the time Bliemeister petitioned for bankruptcy protection, was properly discharged.
 

 AFFIRMED.
 

 [1]
 

 . The district court wrote: "This Court asked the State why it did not assert immunity earlier. The State replied that it knew it was entitled to sovereign immunity and did not assert it earlier because it was aware of cases which hold that it could raise the issue at any time. The State’s failure to raise sovereign immunity until the bankruptcy court heard oral argument on its motion for summary judgment was not an oversight, it was clearly a tactical decision. It chose to defend on the merits by answering the complaint and filing a motion for summary judgment. Then 'anticipating defeat,’ it raised sovereign immunity after the bankruptcy court expressed serious doubt’s [sic] about the merits of its claims at oral argument.”
 

 [2]
 

 . Because we find the State of Arizona waived any immunity it might have had available to it in this particular instance, we decline the invitation of the parties to decide whether the states surrendered sovereign immunity in bankruptcy proceedings as part of the plan of the Constitutional Convention.
 
 See Lyng v. Northwest Indian Cemetery Protec
 
 
 *863
 

 tive Ass'n,
 
 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.”).
 

 [3]
 

 . Given this holding, we need not address Bliemeister’s collateral estoppel argument.