**In re MICROAGE CORPORATION, a Delaware corporation, et al., Debtors.**

**Nos. BR–00–03833, BR–00–03840–ECF–CGC to BR–00–03850–ECF–CGC.**

United States Bankruptcy Court, D. Arizona.

Jan. 7, 2003.

Charles A. Pulaski, Jr., Donald B. Gaffney, Todd B. Tuggle, Snell & Wilmer, Phoenix, AZ, for Debtors.

844

Susan Freeman, Lewis and Roca, Phoenix, AZ, for Creditors Committee.

Denise Ann Faulk, Arizona Attorney General's Office, Phoenix, AZ, for State of Arizona ex rel. Arizona Dept. of Revenue.

Christopher J. Pattock, Phoenix, AZ, U.S. Trustee.

## UNDER ADVISEMENT MEMORANDUM DECISION RE: DEBTORS' OBJECTION TO CLAIMS OF ARIZONA DEP'T OF REVENUE AND MOTION FOR DETERMINATION OF DEBTORS' RIGHT TO TAX REFUND

CHARLES G. CASE, II, Bankruptcy Judge.

### I. The Issue

This case squarely presents whether this Court can constitutionally require the State of Arizona ("State") to litigate Debtor's entitlement to a disputed tax refund in bankruptcy court or whether it is immune from such proceeding. The following issues have been addressed by the parties: 1) whether the States ceded sovereign immunity to the federal government under the "plan" of the Constitutional Convention; 2) whether 11 U.S.C. section 106(a)'s waiver of the State's immunity is constitutional; 3) whether the State has waived sovereign immunity in this proceeding, either through its participation in the case or pursuant to 11 U.S.C. section 106(b); 4) whether the State has waived immunity to the extent of any set off rights Debtor may

have; and 5) whether the State of Arizona has abrogated sovereign immunity in cases pending in federal court.[1]

### II. Background

The Arizona Department of Revenue ("ADOR") filed five Proofs of Claim against various affiliated Debtor entities, all of which have apparently been resolved between the parties. In particular, the ADOR filed four Proofs of Claim for transaction privilege taxes ("TPT"), three of which the ADOR estimated at $75,000 each and one that was stated at $2,737.93. The ADOR also filed a Proof of Claim for corporate income taxes of $57.90. Debtors filed an omnibus objection to the three $75,000 TPT claims, requesting that the three claims be allowed in the amounts of $12,000.00, $96,000.00, and $164,000.00 respectively. The ADOR did not respond, thereby agreeing to these amounts. Debtors also objected to the two remaining Proofs of Claims to which the ADOR never responded: The two claims were therefore disallowed.[2]

Subsequently, Debtors filed this Motion for Determination of Debtors' Right to Tax Refund. Debtors allege that they are entitled to an $870,573 tax refund as a result of changes to Arizona's enterprise zone employment tax credit program codified at Arizona Revised Statute ("A.R.S.") section 43–1161 et. seq.[3] On the merits, the ADOR contends that Debtors are entitled to a tax refund of only $172,937 plus applicable interest. Before the merits of the

---

1. To resolve the precise issue before the Court, it will not be necessary to address all these issues at this time.

2. The ADOR states that it withdrew the $57.90 corporate tax claim before Debtors filed any objection to the claim, but the Court has found no motion to withdraw on the docket.

3. The Debtors state that they seek only to offset any refund amounts against the "tax liabilities of the consolidated Debtors, whether incurred previously or in the future." As the amounts of ADOR's prepetition claims are relatively modest, it is clear that the intent here is to apply any refund amount against postpetition tax liabilities on a dollar-for-dollar basis.

claim can be addressed, however, the Court must address the ADOR's argument that the State is immune from this proceeding under the Eleventh Amendment to the United States Constitution.

## III. Analysis

### A. Applicability of Eleventh Amendment Sovereign Immunity in Bankruptcy

■ Following the United States Supreme Court's decision in *Chisholm v. Georgia* in 1793,[4] alarm among the States about the continuing vitality of their immunity from suit in federal court led to the ratification of the Eleventh Amendment.[5] It is well established that the Eleventh Amendment neither created nor expanded States' immunity from suit in federal court but rather preserved it to the extent it existed after the adoption of the Constitution.[6] Although numerous cases have assumed that states' immunity in bankruptcy cases survived the adoption of the Constitution, neither the Supreme Court nor any Court of Appeals has yet explicitly addressed that issue. Debtors therefore posit that the Eleventh Amendment is inapplicable here because the States ceded their authority over cases arising under the bankruptcy power to the federal government through the adoption of Article 1, Section 8.[7] Under Debtor's theory, the subsequent adoption of the Eleventh Amendment did not restore immunity in bankruptcy cases to the States; rather, the pre-*Chisholm* status quo preserved by the Eleventh Amendment includes the ceding of immunity over this narrow category of cases.[8]

To determine the structure of the original Constitution, the United States Supreme Court routinely relies upon the Federalist Papers. Federalist No. 32 states that the federal government may exercise exclusive jurisdiction in three situations: 1. "where the Constitution in express terms granted an exclusive authority to the Union"; 2. where the Constitution "granted in one instance an authority to the Union and in another prohibited the States from exercising the like authority"; and 3. where the Constitution "granted an authority to the Union, to which a similar authority in the States would be absolutely and totally contradictory and repugnant." The Federalist No. 32 at 152–53.

**4.** 2 Dall. 419, 1 L.Ed. 440 (1973).

**5.** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**6.** "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999). "[S]overeign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Id.* at 728, 119 S.Ct. at 2254.

**7.** Article I, Section 8 of the Constitution provides that "Congress shall have Power ... To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States."

**8.** This Constitutional argument is most thoroughly expounded in the bankruptcy court's opinion in *In re Bliemeister*, 251 B.R. 383 (Bankr.D.Ariz.2000), *aff'd on other grounds*, 296 F.3d 858 (9th Cir.2002) and adopted by two other bankruptcy courts in *In re Service Merchandise Co., Inc.*, 262 B.R. 738 (Bankr. M.D.Tenn.2001), *rev'd in part*, 265 B.R. 917 (M.D.Tenn.2001), and *In re Nelson*, 254 B.R. 436 (Bankr.W.D.Wis.2000).

There is little dispute that Article 1, Section 8 prevents States from *legislating* in the bankruptcy arena, a conclusion that makes perfect sense. As was discussed in the Federalist No. 32, exclusive authority to legislate some areas of the law must lie with the federal government to establish a uniform rule of law, such as in the area of naturalization, "because if each state had power to prescribe a DISTINCT RULE there could be no UNIFORM RULE." *Id.* (emphasis in original). However, *immunity from suit* is quite a different matter. While Federalist No. 81 does explicitly state that the naturalization power rests exclusively with the union because "a similar authority in the states would be absolutely and totally *contradictory* and *repugnant*," (emphasis in original) it does not suggest that States could be sued in federal court monetary damages arising out of "naturalization" claims.[9] Nevertheless, Debtors argue that because the naturalization power and bankruptcy power each derive from the same sentence of Article I, Section 8, uniformity in bankruptcy and naturalization necessarily implies a full waiver of sovereign immunity.

Even if Hamilton intended in Federalist No. 81 that states could be sued for "naturalization" claims, the difficulty is that naturalization is not comparable to bankruptcy. Bankruptcy necessarily involves the adjustment of debtor obligations and creditor rights, and a State is often a creditor. The Creditors in bankruptcy cases face both adjustment of the debts owed them and *collection* of debts they owe debtors. Hamilton's gut-level aversion to the forced collection in federal court of debts from states is also clearly stated in Federalist No. 81:

> The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no

pretensions to a compulsive force. They confer no right of action, independent of the sovereign will. To what purpose would it be to authorize suits against States for the debts they owe? How could recoveries be enforced? It is evident, it could not be done without waging war against the contracting State; and to ascribe to the federal courts, by mere implication, and in destruction of a pre-existing right of the State governments, a power which would involve such a consequence, would be altogether forced and unwarrantable.

The same is not true of naturalization; States are rarely, if ever, involved in any capacity in a naturalization proceeding, particularly not as parties against whom monetary relief is sought. This distinction, coupled with the language of The Federalist No. 32, leaves open the very real question of whether exclusive federal power granted in Section 8 means that the States agreed not only to cede to the Union the power to legislate on bankruptcy but also to abrogate their immunity from suit in bankruptcy.

On this point, Debtors cite various cases in which courts have held that States are bound by a discharge of debts in bankruptcy and must comply with bankruptcy claims procedures. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (determining who bears the burden of proof when a state taxing agency files a proof of claim when the substantive law creating the tax obligation puts the burden on the taxpayer); *Hoffman v. Connecticut Dep't of Income Maint.*, 492 U.S. 96, 101, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989) (determining whether former § 106(c) authorized a bankruptcy court to issue a money judgment against a state that had not filed

9. It is hard to conceive what such claims would be.

a proof of claim); *Railway Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335(1982) (holding that a federal statute passed pursuant to Bankruptcy Clause violated uniformity clause because it applied to only one debtor); *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933) (holding that to participate in the distribution of assets in a bankruptcy, a state must file a proof of claim); *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906) (holding that a bankruptcy court has jurisdiction to determine amount of claim after state filed proof of claim); *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (holding that bankruptcy court had jurisdiction to determine proof and allowance of tax claim where state filed claim).

At best, these cases stand for the proposition that a bankruptcy court may determine a State's rights in the debtor's estate, not that a debtor may actively pursue recovery against a State for monies allegedly owed. In *Hoffman*, for example, the Supreme Court concluded that Congress did not, in former section 106(c),[10] make it "unmistakably clear in the language of the statute" that it was abrogating States' Eleventh Amendment immunity from suit in federal court. 492 U.S. at 101, 109 S.Ct. at 2822. The Court concluded that "a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, ... but would not be subjected to monetary recovery." *Id.* at 102, 109 S.Ct at 2823. Sovereign immunity was not mentioned in *Raleigh, Gibbons, Irving Trust, Anderson* or *Gardner*.

In numerous cases, courts have assumed that sovereign immunity in bankruptcy exists unless the State waives it. For example, the Ninth Circuit in *State of Arizona v. Bliemeister (In re Bliemeister)*, 296 F.3d 858 (9th Cir.2002), held that sovereign immunity

> may be forfeited where a state fails to assert it. A state generally waives its immunity when it voluntarily invokes federal jurisdiction or makes a clear declaration that it intends to submit itself to federal jurisdiction. Express waiver is not required; a state waives its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.

In *Bliemeister*, the State filed an answer to debtor's adversary complaint to determine the State's industrial commission claim dischargeable. Although the State had not filed a proof of claim, it did file an answer and a motion for summary judgment, did respond to debtor's motion for summary judgment and did participate in oral argument on those motions. Before a decision was rendered on the motions, the State filed a motion to dismiss, raising for the first time its sovereign immunity defense. The court held the State's immunity assertion was too late, and that the State had waived immunity by participating meaningfully in the case.

Because the Court of Appeals disposed of the case on the grounds of waiver, it did not address the bankruptcy court's earlier conclusion that "sovereign immunity is not assertable in a bankruptcy case governed by federal law. Congress did not need to adopt 11 U.S.C. section 106, because the

---

**10.** Former § 106(c) provided that

Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and (2) a determination by the court of an issue arising under such a provision binds governmental units.

State's sovereignty had been abrogated in the original Constitution once the federal government elected to enact bankruptcy laws." *Id.* (quoting *Bliemeister v. Industrial Comm'n of Arizona (In re Bliemeister)*, 251 B.R. 383, 391–92 (Bankr.D.Ariz. 2000)).

One bankruptcy appellate panel has held that the States ceded sovereign immunity in bankruptcy matters at the Constitutional Convention. *See Hood v. Tennessee Student Assistance Corp. (In re Hood)*, 262 B.R. 412 (6th Cir. BAP 2001). *Hood*, like *Bliemeister*, involved a situation in which the debtor brought an adversary proceeding seeking to discharge a State-guaranteed student loan, as opposed to a situation in which the State filed a proof of claim in the bankruptcy proceedings and the debtor is seeking recovery of money from the State. In this manner, *Hood* differs from the case here. The District Court for the Middle District of Tennessee in *In re Service Merchandise Co., Inc.*, 265 B.R. 917 (M.D.Tenn.2001) disagreed with the BAP's analysis in *Hood*, and distinguished its facts from *Hood* on that very ground. Because the debtor in *Service Merchandise* was seeking a tax refund from the State, the court determined it was attempting to " 'reach into the State treasury,' . . . an action the Eleventh Amendment and sovereign immunity were specifically designed to prevent." 265 B.R. at 922. Moreover, the district court held that filing a proof of claim for sales and use tax from 1996–1999, did not waive immunity with respect to a refund of cor-

porate excise taxes for the years 1987–1992 because the taxes were for different years. Accordingly, the court held that the corporate tax refund claim and the State's claim for excise taxes due did not involve the same transaction or occurrence as required by 11 U.S.C. § 106(b).

Regardless, this Court is not bound by the 6th Circuit BAP's decision in *Hood* and finds *Service Merchandise* a better reflection of prior case law and the intent of the framers of the Constitution. This result is also consistent with the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and the Ninth Circuit's decision in *In re Lazar*, 237 F.3d 967 (9th Cir.2001). *See also In re Claxton*, 273 B.R. 174 (Bankr.N.D.Ill.2002). Sovereign immunity, therefore, was not ceded under the "plan of the convention" and is still available to a State in bankruptcy proceedings to the extent it has not been unequivocally abrogated or waived.

### B. 11 U.S.C. section 106(a)

■ Congress has expressly attempted to deprive the States of sovereign immunity in bankruptcy cases. In particular, 11 U.S.C. section 106, entitled "Waiver of sovereign immunity," provides that

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections . . . 505 . . . . [11]

---

11. 11 U.S.C. section 505(a) allows a court to determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The Court is prohibited from determining a debtor's right to a refund when
(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of a case under this title; or

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such section or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages.

\*    \*    \*    \*    \*    \*

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

Debtors argue that under section 106(a) and section 505, the court may determine more than simply tax liability. This ignores, however, the Ninth Circuit's decision in *Mitchell v. Franchise Tax Board, State of California (In re Mitchell)*, 209 F.3d 1111 (9th Cir.2000), ruling section 106(a) unconstitutional. In *Mitchell*, the Chapter 13 debtors filed an adversary proceeding against the State franchise tax board to determine the amount and dischargeability of taxes owed to the state. The State countered by alleging, in part,

that it was immune from suit pursuit to the Eleventh Amendment.

The Ninth Circuit began by stating the oft-cited proposition that "a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state." 209 F.3d at 1115–16 (citing *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). With respect to an express waiver by the State, the *Mitchell* court rejected debtors' argument that the State waived immunity by acknowledging before the court that the debt was discharged. Such an acknowledgment alone was insufficient to express an intent to waive immunity, especially where it raised immunity as a defense.

■ The question was then whether Congress's attempt to abrogate the State's immunity pursuant to section 106(a) was within its power: "Congress may abrogate state sovereign immunity in federal court if, 'pursuant to a valid exercise of power, [it] unequivocally expresses its intent to abrogate the immunity.'" *Id.* at 1118 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). The court held that it was not, relying on the United States Supreme Court's decision in *Seminole Tribe, supra.* In *Seminole Tribe*, the Court held that Congress could not abrogate State sovereign immunity pursuant to its Article I powers. 517 U.S. at 72–73, 116 S.Ct. at 1132. The Ninth Circuit concluded that section 106(a)

(B) any right of the estate to a tax refund, before the earlier of—
(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.
11 U.S.C. section 505(a)(2).

was promulgated either pursuant to Congress' Article I power, and therefore unconstitutional in light of *Seminole,* or pursuant to section 5 of the Fourteenth Amendment, and therefore also invalid because it was not remedial and

> thus was not an appropriate exercise of Congress's enforcement powers (even if Congress had intended it to be).... In order to be an appropriate exercise of its remedial powers, congressional abrogation of Eleventh Amendment immunity under § 5 of the Fourteenth Amendment must be "congruen[t] and proportional[ ] between the injury to be prevented or remedied and the means adopted to that end." ... Until Congress makes findings of a pattern of state violations and passes legislation that is proportional to its remedial aims, § 106(a) must be viewed as an unconstitutional assertion of Congress's power, because it fails the congruence requirement of *City of Boerne.*

*Mitchell,* 209 F.3d at 1119 (quoting *Florida Prepaid,* 119 S.Ct. at 2206 (quoting *City of Boerne v. Flores,* 521 U.S. 507, 519–20, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997) (internal quotation marks omitted))). Section 106(a) is therefore ineffective to waive the State's sovereign immunity in this case.

### C. 11 U.S.C. section 106(b)

■ Section 106(b) provides that a State, by filing a proof of claim, waives sovereign immunity "with respect to a claim that is property of the estate and that arose out of the same transaction or occurrence" out of which the State's claims arose. The question, therefore, is whether the ADOR's Proofs of Claim for transaction privilege taxes and corporate taxes involve the same transaction or occurrence

as Debtors' request for a tax refund for enterprise zone employment tax credits.

■ Debtors make no argument that the Proofs of Claim implicate directly the enterprise zone employment tax credits, and this Court finds no such relationship. As noted, section 106(b) provides that the filing of a proof of claim is a waiver to a claim against such governmental unit that arose out of the same transaction or occurrence. This language tracks the language of Fed.R.Civ.P. 13(a), which defines a compulsory counterclaim as a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The Ninth Circuit applies this "so-called 'logical relationship' test of Fed.R.Civ.P. 13(a)." *Lazar,* 237 F.3d at 979 (quoting *Pinkstaff v. United States (In re Pinkstaff),* 974 F.2d 113, 115 (9th Cir.1992)).

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*Id.*

Transaction privilege taxes are based on gross proceeds of sales or gross income. A.R.S. section 42–5008. The enterprise zone employment tax credit is based on the employment of a "qualifying employee." While both involve ultimately the calculation of taxes, that alone is insufficient to find that they arise out of the same transaction or occurrence. Similarly, the Court finds that the ADOR's claim for corporate income taxes for the year 1999 does not arise out of the same transaction or occurrence with respect to enterprise zone employment tax credits for the year

1996.[12] No argument has been made that to calculate Debtors' income taxes for 1999, one must take into account enterprise zone employment tax credits for prior years.

■ Instead, Debtors argue that A.R.S. section 42–1118(A), which allows for the "automatic" setoff of excess taxes paid against taxes imposed, creates in essence a general taxing scheme—meaning all taxes imposed are in reality all part of the same transaction or occurrence regardless of the type of taxes or how they are calculated. The statute provides:

[i]f the department determines that any amount of tax, penalty or interest has been paid in excess of the amount actually due, the department shall credit the excess amount against any tax administered pursuant to this article, including any penalty or interest owed by the taxpayer.

This argument, however, overstates the impact of the statute and the intent behind it. At best, the statute is a collection mechanism for the taxing authority and merely creates a statutory right of setoff.

■ To waive sovereign immunity, the State must "unequivocally express[ ] its consent to federal jurisdiction." *In re Mitchell*, 209 F.3d at 1117. As the United States Supreme Court has stated, "our 'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" *College Savs. Bank*, 527 U.S. at 675, 119 S.Ct. at 2226 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Nothing in the language of this statute "unequivocally" expresses the Arizona Legislature's intent to effectuate a waiver by the ADOR of

sovereign immunity in the bankruptcy arena. In fact, relevant case law suggests that the Arizona Legislature never even considered that section 42–1118 could constitute a waiver of immunity. Arizona courts uniformly reiterate that if there is a dispute with respect to a refund, the taxpayer must use the administrative refund procedures set forth in Title 42 before pursuing a suit in Tax Court. *Hamilton v. State*, 186 Ariz. 590, 925 P.2d 731 (App. 1996); *Kerr v. Waddell*, 185 Ariz. 457, 916 P.2d 1173 (App.1996). Nothing suggests a taxpayer may bypass the administrative proceedings and simply pursue the taxing authority directly in state or federal court. Therefore, Debtors' section 106(b) argument fails.

**D. Participation in the Case**

■ In addition to filing the Proofs of Claim, Debtors point to several other things the ADOR did to suggest that the State actively participated in the bankruptcy proceedings such that this Court should find a waiver of immunity. In particular, Debtors contend that the ADOR's filing a Notice of Appearance coupled with the actual appearance of the attorney general on behalf of the ADOR constitutes a knowing and intelligent waiver of immunity under a "totality of circumstances" analysis.

■ Debtors provide no legal support for such a proposition. These facts do not satisfy the test established by the 9th Circuit in *Bliemeister*. Nothing about the Notice of Appearance and the actual appearance of the ADOR's attorney constitutes a knowing and intelligent waiver by the ADOR of its right to immunity. At most, these were procedural actions taken so that the ADOR could participate in this case and were not conclusive—whether it

12. The Court finds irrelevant the fact that the claim was ultimately disallowed and that the ADOR chose not to pursue the claim after filing its Proof of Claim. In addition, the Court finds no evidence that the claim was properly withdrawn by the ADOR.

decided to waive its right to sovereign immunity or raise it as a defense. Making a "general appearance" in a case is not the same as meaningfully participating in a case on the merits. *See In re Lazar,* 237 F.3d 967, 980 n. 14 (9th Cir.2001); *Hill v. Blind Industries,* 179 F.3d 754 (9th Cir. 1999). Therefore, this argument also fails.

### E. 11 U.S.C. section 106(c)

■ Debtors next argue that when a State elects to file a proof of claim, it also opens itself to the jurisdiction of this Court under subsection (c) of section 106.[13] Section 106(c) permits the estate to setoff against the allowed claim of the governmental unit any claim that the debtors have against the governmental unit. The debts or credits to be offset need not arise from the same transaction or occurrence, and are not restricted by compulsory counterclaim principles. H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6274: S.Rep. No. 989, 95th Cong., 2d Sess 29–30 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5814–5816; *see also* Collier on Bankruptcy ¶ 106.07[2][a] (15th ed.2001). Section 106(c) is limited in scope and applicability, however: "Under this provision, the setoff permitted is only to the extent of the governmental unit's claim. No affirmative recovery is permitted. Subsection (a) governs affirmative recovery." *Id.*

The Debtors here have volunteered that they seek only the ability set off their claimed refund against other obligations they may owe the State and that they seek no affirmative recovery against the State beyond the amount of the refund. At present the State has allowed pre-petition claims in the aggregate amount of at least $272,000.00. Debtors' counsel has suggested there may be other post-petition tax claims owing to the State, although this record is barren on that score. If such claims are ultimately allowed, it would appear by the plain language of sections 106(c) and 101(5) that offset of those claims against the allowed refund, if any remains, would also be mandated.[14]

■ The question is whether subsection (c) is simply a procedural guarantee that a debtor may receive a setoff against a State, as determined by some other court or tribunal, or whether it affirmatively effectuates a waiver of State sovereign immunity to the extent of the setoff amount, thereby granting this Court authority to litigate the validity and amount of any such setoff against the State itself. The United States Supreme Court has on two occasions suggested that subsection (c) effects an actual waiver of sovereign immunity. In *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992), the Court stated in dicta that subsections (b) and (c)

---

**13.** Debtors also make what can be described as a "combination setoff" argument whereby they contend that because the Arizona Legislature expressly requires setoff pursuant to A.R.S. § 42–1118(A) and Congress legislated a waiver of immunity pursuant to 11 U.S.C. § 106(c) when a right of setoff exists, that this justifies "broader affirmative recovery from the state" that goes beyond the same transaction or occurrence analysis pursuant to *In re Lazar.* The Ninth Circuit in *Lazar* reserved for another day the question of whether the filing of a proof of claim will effectuate a waiver of immunity as to broader affirmative

recovery. The Court finds nothing about the rights of setoff to justify such a result. Immunity is not so easily waived.

**14.** "[T]here shall be offset against a claim . . . of a governmental unit . . . ." 11 U.S.C. § 106(c). " '[C]laim' means—right to payment, whether . . . matured . . . [or] unmatured." 11 U.S.C. § 101(5). Although, as a general matter, right of setoff is preserved under section 553 only as to mutual pre-petition debts, there is no such limitations stated in section 106(c).

"plainly waive sovereign immunity with regard to monetary relief in two settings: compulsory counterclaims to governmental claims [subsection b] ... and permissive counterclaims to governmental claims capped by a setoff limitation [subsection c]." [15] In *Hoffman v. Connecticut Dep't. of Income Maintenance.* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Court similarly stated that the language of subsection [b]

> carefully limits the waiver of sovereign immunity under that provision, requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's claim. Subsection [c] likewise provides for a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim.

Other courts have relied on this same language to find that a State waives immunity with respect to setoffs, pursuant to subsection (c), when it files a proof of claim. In *Doe v. U.S.*, 58 F.3d 494 (9th Cir.1995), the Ninth Circuit concluded that the federal government waived immunity pursuant to subsection (c) when the IRS filed a proof of claim such that any judgment the debtor may receive in his Federal Tort Claims Act case against the FBI

would be setoff against the IRS's claim. Debtor had filed an adversary proceeding by way of setoff, asserting the same FTCA and contract claims he had originally presented prepetition in the district court. On the government's motion, the adversary proceedings were withdrawn from the bankruptcy court to the district court and assigned to the same judge who had presided over the earlier case in the district court.

In *In re Charter Oak Associates*, 203 B.R. 17, 21–23 (Bankr.D.Conn.1996), the court relied expressly on the above quoted language from *Nordic*, and concluded that the filing of a proof of claim by one State entity effectuated a waiver of immunity by the State as a whole under subsection (c) such that it conferred "federal jurisdiction sufficient to deny the defendant's motion to dismiss." *See also In re Bison Heating & Equipment, Inc.*, 177 B.R. 785 (Bankr. W.D.N.Y.1995) (holding that filing of a proof of claim by New York Labor Department waived immunity with respect to trustee's claim for offset against Department of Taxation and Finance, who had not filed a proof of claim); *U.S. v. McPeck*, 910 F.2d 509 (8th Cir.1990) (holding IRS waived immunity with respect to setoff by debtor by filing proof of claim). Nothing

---

15. The actual holdings of *Nordic* and *Hoffman* were that former section 106(c) did not unequivocally abrogate sovereign immunity and, therefore, did not permit recovery of a money judgment against the federal *(Nordic)* or state *(Hoffman)* government, whereas former subsections (a) and (b) did unequivocally waive immunity with respect to compulsory and permissive counterclaims. Subsection (c) at the time provided that "[e]xcept as provided in subsections (a) [compulsory counterclaims] and (b) [permissive counterclaims] of this section and notwithstanding any assertion of sovereign immunity—(1) a provision of this title that contains 'creditor,' 'entity,' or 'governmental unit' applies to governmental units; and (2) a determination by the court of an issue arising under such a provision binds governmental units." Congress overruled the holdings of *Nordic* and *Hoffman* with the 1994 amendments to § 106, in particular with the replacement of former subsection (c) with the new subsection (a). However, the "compulsory counterclaim" and "permissive counterclaim" provisions of section 106 were not amended, but simply "relettered" as subsections (b) and (c) respectively. *See* Collier on Bankruptcy, ¶ 106.LH[4] and n. 13 (15th ed.2001). While admittedly dicta, the Supreme Court's discussion of § 106's permissive and compulsory counterclaims in *Nordic* and *Hoffman* are unaffected by the 1994 amendments.

in the language of subsection (c) suggests a different result.

While none of these courts specifically discussed the next question, *i.e.*, which tribunal determines the validity and amount of any setoff, the language of the cases suggest strongly that any such questions would be determined by the bankruptcy court—the cases contain no suggestion that such unresolved claims would proceed elsewhere. Such a conclusion was expressly reached, moreover, in *In re Gibson*, 176 B.R. 910 (Bankr.D.Or.1994). In *Gibson*, the bankruptcy court concluded that the IRS, by filing a proof of claim, waived sovereign immunity for purposes of determining the allowance of its claim. *Id.* at 913 (citing *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933) and *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947)). The court further concluded that the government also waived immunity pursuant to former subsection 106(b), now codified at section 106(c), for "purposes of court decision of any affirmative defense or counterclaim" to the proof of claim that the estate may file. *Id.* Once the State is found to have waived sovereign immunity, the bankruptcy court is free to litigate all issues involving those claims. *See Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947) (holding that "[w]hen the State becomes the actor and files a claim against the fund, it waives any immunity it might otherwise have had respecting the *adjudication* of the claim." (Emphasis added)).

In this case, there is no dispute that Debtors have a right to setoff;[16] the only remaining issue to be litigated is the amount of the setoff. The ADOR believes this must be done in State tax court. The meaning of "waiver," however, in the context of 11 U.S.C. section 106 has consistently been applied to mean the bankruptcy court may litigate all issues surrounding the claim. As such, this Court is the proper forum for litigating the amount of the Debtors' claim of setoff.

The Court makes clear to the parties, however, that any setoff amount so determined is limited not only by the amount of the ADOR's claims pursuant to section 106(c), but also by Debtors' own offer "to limit any relief to application of refunds to the tax liabilities of the consolidated Debtor, whether incurred previously or in the future."

## IV. Conclusion

Based on the foregoing analysis, the Court finds that the ADOR waived sovereign immunity with respect to Debtors' claim of setoff pursuant to 11 U.S.C. section 106(c). As such, the Court need not address the last issue presented, whether the State of Arizona abrogated sovereign immunity in cases pending in federal court.[17] Debtors are to lodge a form of order consistent with this decision. It is further ordered that the Court shall conduct a Rule 16(b) Scheduling Conference on the remaining issue of determining the amount of Debtors' claimed setoff for **Jan-**

---

**16.** The State concedes that it owes Debtors a refund of at least $172,937.00.

**17.** The Ninth Circuit in *Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir.1981), found that although the Supreme Court of Arizona "abolished" sovereign immunity in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963), this did not mean that the state had abrogated its sovereign immunity for

suits brought in federal court. The Debtors argue that *Ronwin* no longer has vitality in light of subsequent Arizona Supreme Court decisions. Given the Debtors' express concession that only setoff is sought, this Court sees no reason to explore the thorny subject of whether the Ninth Circuit would revisit that precedent today.

uary 21, 2003, at 10:00 a.m., in Courtroom 6 of the United States Bankruptcy Court, 2929 N. Central Avenue, Phoenix, Arizona.

So ordered.