**In re LAKE WORTH GENERATION, LLC, Debtor.**

**No. 03–31953–BKC–PGH.**

United States Bankruptcy Court, S.D. Florida.

Dec. 9, 2004.

Jordi Guso, John B. Hutton, Miami, FL, for Debtor.

## *ORDER AND OPINION DENYING PALM BEACH COUNTY TAX COLLECTOR'S MOTION TO DISMISS DEBTOR'S § 505 MOTION*

PAUL HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court pursuant to John K. Clark, the Palm Beach County Tax Collector's (the "Tax Collector") Motion to Dismiss Debtor's Motion to Determine Tax Liability Pursuant to 11 U.S.C. §§ 105(a) and 505(a) and Motion to Abstain (the "Motion to Dismiss"). The Motion to Dismiss was prompted by Lake Worth Generation, LLC's (the "Debtor") Motion to Determine Tax Liability Pursuant to 11 U.S.C. §§ 105(a) and 505(a) (the "505(a) Motion").[1] The Tax Collector initially re-

---

1. The Debtor's Motion to Determine Tax Liability was joined with it's "Opposition to Palm Beach County Tax Collector's Motion to Compel Satisfaction of Statutory Liens." The

sponded to the 505(a) Motion by means of a "Consolidated Pleading" objecting to the confirmation of the Debtor's Chapter 11 plan and disclosure statements and opposing the Debtor's § 505(a) Motion (the "Consolidated Pleading"). Closely on the heels of filing the Consolidated Pleading, the Tax Collector filed the Motion to Dismiss. The Debtor replied to the Motion to Dismiss ("the Reply"), and the Tax Collector replied to the Reply (the "Reply to the Reply"). Having reviewed the numerous motions, memoranda of law, and arguments of counsel, the Court concludes that it has the authority to determine Debtor's tax liability on personal property within the Debtor's estate under the facts presented in this case. Consequently, the Tax Collector's Motion to Dismiss is **DENIED**.

### Factual Background

The Debtor is a Delaware limited liability company [2] formed to design, build, and operate a power generation plant in the city of Lake Worth, Florida. Construction on the project began in June 2001.[3] While in the process of constructing the plant, the Debtor's financing for the project collapsed due in part to the financial woes of Enron, who guaranteed the financing. Despite the loss of Enron's financing, the Debtor continued construction on the plant until April 2002, when the Debtor could not obtain additional financing to continue the project. As a result, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11, title

11 of the United States Code on April 16, 2003.[4]

The Debtor continued to manage the affairs of Lake Worth Generation as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. With construction suspended and no financing or reorganization in sight, the Debtor sought to sell substantially all of its assets.[5] The Debtor claims that it began marketing the project to prospective buyers in October 2002. The Debtor claims that it nearly reached an agreement with the Florida Municipal Power Agency ("FMPA") to sell the assets for $16,000,000 in June 2003.[6] The deal with FMPA was not completed, however, and the Debtor continued to court prospective buyers. The Debtor's efforts were successful when CTG Capital Partners, LLC ("CTG"), agreed to purchase Lake Worth Generation's assets for $8,000,000, subject to the Debtor's receiving higher bids.[7]

On January 9, 2004, the Debtor filed an Emergency Motion for an Order Establishing Bidding Procedures, Approving the Form of the Asset Purchase Agreement and Scheduling Hearing Date to Consider Final Approval of the Sale (the "Bidding Procedures Motion"). Shortly thereafter, on January 16, 2004, the Tax Collector filed an objection to the Bidding Procedures Motion (the "Objection to Bidding Procedures Motion"). In the Objection to Bidding Procedures Motion, the Tax Collector objected that the sale of substantially all of the Debtor's assets free and clear

---

Court only addresses the Motion to Determine Tax Liability for purposes of this Order and Opinion.

**2.** *See* Secretary's Certificate dated April 15, 2003, and attached to Application of Debtor in Possession for Employment of Proposed Counsel *Nunc Pro Tunc*.

**3.** *See* Amended Joint Disclosure Statement in Connection with Joint Plan of Liquidation, pp. 7–14.

**4.** *See supra* note 3, at 7–8.

**5.** *See supra* note 3, at 8.

**6.** *See supra* note 3, at 11.

**7.** *See supra* note 3, at 12.

of liens would delay payment of the property taxes, that the sale was in violation of state law, and that junior secured claimants would be satisfied before his senior lien. He also objected to the sale procedure because it allowed administrative and break-up fees to be paid without ensuring the satisfaction of the Tax Collector's property tax lien. He further objected to the asset purchase agreement because its terms were unclear. In the Objection, the Tax Collector also asserted that "[He] should not be compelled to submit to the jurisdiction of the Bankruptcy Court for determination and payment of the amount of outstanding property taxes due on the property to be sold."

On February 6, 2004, the Court entered an agreed order approving the asset purchase agreement with CTG as well as scheduling an auction sale of the Debtor's assets and preserving the Tax Collector's objections until the time of the auction sale.[8] On March 8, 2004, the Tax Collector supplemented and renewed his objections to the sale on largely the same grounds raised in his Objection to the Bidding Procedures Motion. On March 14, 2004, an auction sale was conducted in the Bankruptcy Court. CTG was the high bidder at the auction, purchasing the assets for $10,050,000. The Court overruled the objection and entered an order authorizing the Debtor to sell substantially all of its assets (the "Sale Order"). Pursuant to the Sale Order, the Debtor was authorized and directed to pay $919,000 to Cochrane Engineering, Ltd., and $1,000,000 to the City of Lake Worth in full satisfaction, release, and discharge of their secured claims against the Debtor and the estate. In addition, the Debtor's counsel was ordered to retain the remaining proceeds in trust to satisfy all other claims including the Tax Collector's lien. The Sale Order also provided that all other liens, claims, interests, and encumbrances which were not paid at closing attached to the proceeds of the sale. Currently, the Debtor's attorney holds approximately $8.6 million in trust. According to its Amended Plan of Reorganization, the Debtor proposed to reserve cash from the sale of its assets for the purpose of paying the Tax Collector's asserted lien in full.

The Tax Collector has not filed a formal proof of claim in this case. Instead, he has requested affirmative relief by means of motions and objections to the Debtor's motions. The Tax Collector did, however, file two motions to extend the deadline in which to file a proof of claim. Since filing his first Motion to Extend Deadline to File Proof of Claim, the Tax Collector has maintained his assertion that he is entitled to full payment for the Debtor's unpaid taxes. In his "Motion to Compel Satisfaction of Statutory Liens, Alternatively, Award Adequate Protection to Ensure Satisfaction of Statutory Liens," (the "Motion to Compel Satisfaction of Liens") the Tax Collector asserts that the Debtor owes personal property taxes for tax year 2003 in the amount of $344,747.20, plus interest of 18% per annum and attorney's fees which were due and payable on April 1, 2004. According to the Tax Collector, the lien arises from a sworn tangible personal property tax return filed by the Debtor with the Palm Beach County Property Appraiser that asserts a value of the Debtor's property of $16,000,000. In addition, the Tax Assessor asserts that the Debtor owes unpaid personal property taxes for tax year 2004, which have not yet been liquidated but are similarly subject to a lien on

---

**8.** The Agreed Order preserved all objections to the sale by any parties in interest until the auction sale took place.

the Debtor's property. In the Motion to Compel Satisfaction of Liens, the Tax Collector also moved for adequate protection to ensure satisfaction of the tax liens in the event that the Court does not abstain from deciding the amount of the Debtor's tax liabilities or compel the Debtor to satisfy the tax liens.

Throughout the series of motions and objections that the Tax Collector has filed, he has requested forms of relief including satisfaction of liens, adequate protection, and abstention from determining the taxes that the Debtor owes, at the same time that he asserts sovereign immunity. Since his first participation in this case with his Motion to Extend Deadline to File Proof of Claim, the Tax Collector has continued to assert sovereign immunity. He has continued this assertion through the Objection to the Bidding Procedures Motion, the Motion to Compel Satisfaction of Statutory Liens, the Consolidated Pleading, the Motion to Dismiss, and the Reply to the Reply to the Motion to Dismiss.

The issue before the Court is whether it has jurisdiction to determine the Debtor's state tax liability for *ad valorem* personal property taxes assessed for tax years 2003 and 2004. For the reasons that follow, the Court concludes that it has appropriate jurisdiction to determine the Debtor's tax liability.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (0). The

Debtor filed its 505(a) Motion to value its personal property and resulting tax liability. The Tax Collector responded with his Motion to Dismiss.

The parties agree that the *ad valorem* personal property taxes assessed against the Debtor for tax years 2003 and 2004 are still outstanding. The parties also agree that the Debtor has not challenged these assessments in State court. Therefore, the prohibition of § 505(a)(2)(A) does not apply.[9] The parties disagree, however, that the amount of the taxes assessed against the Debtor's equipment was appropriate. The Tax Collector asserts that the value of the assessed property as of the petition date is $16 million. The Debtor asserts that the value of the property should be approximately $10 million as is evidenced by the purchase price at the March 14, 2002 auction.

The parties have stipulated that the present Motion to Dismiss may be decided on strictly legal grounds. Therefore, the Court is only considering the jurisdictional question in this Opinion and Order, and not the correct valuation of the Debtor's property for tax purposes. The issue before the Court is whether it has jurisdiction to determine the value of the property in order to determine the amount of taxes on the property, and if the Court does possess such jurisdiction, whether it must abstain and leave this determination to the State courts and administrative tribunals.

The Tax Collector advances five arguments in favor of his Motion to Dismiss. First, the Tax Collector argues that the Debtor's § 505(a) Motion should be dis-

---

9. According to 11 U.S.C. § 505(a)(1), the Bankruptcy Court "may determine the amount or legality of any tax ..." However, § 505(a)(2) provides:
"The court may not so determine—
   (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount

or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title ..."

missed based on lack of subject matter jurisdiction pursuant to the Eleventh Amendment of the Constitution, which protects the sovereign immunity of the Tax Collector. Second, he argues that the Tenth Amendment precludes this Court from determining the Debtor's tax liability. Third, he argues that the 505(a) Motion should be dismissed because it was not commenced as an adversary proceeding, but instead filed as a motion. Fourth, he argues that the 505(a) Motion is a disguised attempt to secure a refund, which would similarly be an affront to the State's sovereign immunity. Fifth and finally, the Tax Collector argues that the Court should invoke the mandatory abstention provision of 28 U.S.C. § 1334, or exercise its discretion and abstain from determining the Debtor's tax liabilities out of respect for State law.

The Debtor argues that the Court should determine the amount of the estate's tax liability pursuant to § 505(a) of the Bankruptcy Code.[10] First, the Debtor asserts that according to § 505(a), the Court has the power and authority to determine the amount of *any* tax. Second, the Debtor asserts that the Court should determine the estate's tax liability based on the actual fair market value of the personal property owned by the Debtor as of January 1, 2003, which, according to the Debtor, was approximately $10,000,000. Third, the Debtor argues that the Tax Collector cannot assert sovereign immunity because the Tax Collector is not an arm of the State, and is, therefore, not entitled to sovereign immunity. In the alternative, the Debtor argues that although the Tax Collector has not filed a proof of claim, the Motion to Compel Payment, etc., consti-

tutes the equivalent of a secured proof of claim, and in conjunction with the Tax Collector's substantial participation in this case, should be considered a constructive waiver of sovereign immunity. Finally, the Debtor argues that despite the Tax Collector's assertion of sovereign immunity, the Court has *in rem* jurisdiction over the *res* of the bankruptcy estate; therefore, sovereign immunity is not implicated. The Debtor opines that pursuant to the Supreme Court's recent decision in *Tennessee Student Assistance Corp. v. Hood (In re Hood)*, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), this Court should exercise jurisdiction over the proceeds from the sale of the Debtor's equipment and determine how much of the proceeds should be distributed to the Tax Collector.

### Following Hood the Court has in rem Jurisdiction

The Eleventh Amendment to the Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The reach of this immunity has been expanded beyond suits against a State by "[c]itizens of another State" to include suits against a State by its own citizens without its consent. *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Since the decision in *Hans*, the Eleventh Amendment has been interpreted as a prohibition against federal

10.  Section 505(a)(1) provides:
    "Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, whether or not

previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

courts exercising jurisdiction in private suits against the States. *See, e.g., Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Furthermore, *Seminole Tribe* declared that Congress may not abrogate the States' sovereign immunity under its Article I powers. *Id.* at 72–73, 116 S.Ct. 1114. There is disagreement about what constitutes a "suit" for Eleventh Amendment purposes and whether Congress can abrogate sovereign immunity pursuant to provisions in the Constitution,[11] but the Supreme Court has long held that the Eleventh Amendment prevents suits by private parties against States wherein a money judgment "must be paid from the public funds in the state treasury ..." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Tax Collector has asserted the benefit of such immunity from suit in federal court on several occasions in this case.

■ The Court is spared from entering the debate and deciding whether Congress properly abrogated State sovereign immunity in any provisions of the Bankruptcy Code since the Supreme Court's decision in *Hood* precludes such a discussion in this case. Moreover, the Court need not risk the Scylla of deciding whether a given amount of participation in this bankruptcy case constitutes a constructive waiver of sovereign immunity by the Tax Collector.[12] Similarly, the Court need not brave the Charybdis of determining whether the Tax Collector is an "arm of the state," which

---

**11.** In *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court noted that authority to abrogate sovereign immunity pursuant to a Constitutional provision was found in only two instances. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (holding that the Interstate Commerce Clause, Section 8 of Article I of the Constitution, granted Congress power to abrogate sovereign immunity); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that legislation enacted pursuant to Section 5 of the Fourteenth Amendment authorized Congress to abrogate sovereign immunity). *Union Gas* was subsequently overruled by *Seminole Tribe,* 517 U.S. at 66, 116 S.Ct. 1114.

**12.** *Compare, e.g., Confederated Tribes of Colville Reservation Tribal Credit v. White (In re White),* 139 F.3d 1268, 1271 (9th Cir.1998) (finding waiver because state acknowledged it had a claim, objected to confirmation of plan, twice voted against plans, sought bankruptcy court order denying confirmation, and ultimately filed adversary proceeding when case converted to Chapter 7 liquidation); *and Sullivan v. Town & Country Home Nursing Servs., Inc. (In re Town & Country Home Nursing Servs., Inc.),* 963 F.2d 1146, 1153–54 (9th Cir.1992) (waiver by state offsetting prepetition overpayments to debtor against post-petition payments); *and Bliemeister v. Industrial Comm'n of Arizona (In re Bliemeister),* 251 B.R. 383, 393 (Bankr.D.Az.2000) (state sought summary judgment in seeking determination of dischargeability of debt owed to state), *aff'd,* 296 F.3d 858 (9th Cir.2002); *and Schulman v. California State Water Res. Control Bd. (In re Lazar),* 200 B.R. 358, 377 (Bankr. C.D.Cal.1996) (numerous appearances by state to protect secured status in tax liens constituted "general appearance" that waived immunity); *and Official Comm. of Unsecured Creditors of Operation Open City v. New York State Dep't of State (In re Operation Open City, Inc.),* 170 B.R. 818, 824 (S.D.N.Y.1994) (taking a set-off without first requesting relief from stay constitutes waiver); *with May v. Missouri Dep't of Revenue (In re May),* 251 B.R. 714, 720 (8th Cir. BAP 2000) (state did not waive immunity by filing answer to complaint to determine dischargeability of taxes); *and Burtch v. LaVecchia (In re PHP NJ MSO Inc.),* 1999 WL 360199 *1, *9 (D.Del.1999) (no waiver of immunity where state insurance commissioner filed motion to transfer venue, motion to abstain, motion for relief from automatic stay, objection to motion seeking extension of time to assume or reject executory contracts, and entered stipulation for partial payment to state); *and O'Brien v. Agency of Natural Res. (In re O'Brien),* 216 B.R. 731, 735 (Bankr.D.Vt.1998), *appeal dismissed,* 184 F.3d 140 (2d Cir.1999) (no waiver when state participated in confirmation proceedings).

would similarly implicate the question of the Tax Collector's sovereign immunity.[13] The Court's *in rem* jurisdiction over the *res* within the bankruptcy estate puts the ability to determine the Debtor's tax liability squarely within the ambit of the Court's authority.

In *Tennessee Student Assistance Corporation v. Hood (In re Hood)*, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), a resident of Tennessee signed promissory notes for educational loans guaranteed by the Tennessee Student Assistance Corporation (TSAC). *Id.*, 124 S.Ct. at 1908. TSAC was created by the Tennessee Legislature to administer student assistance programs. *Id.* TSAC did not contract with the debtor, but was drawn into the case when Sallie Mae assigned TSAC its proof of claim on the Debtor's promissory notes. *Id.* The Bankruptcy Court granted Hood a general discharge; however, her student loans were not listed in her debts, and the discharge did not cover them. *Id.* Hood then reopened her bankruptcy petition in order for the Bankruptcy Court to determine that her student loans were dischargeable pursuant to § 523(a)(8) as an "undue hardship." *Id.*, 124 S.Ct. at 1909. In accordance with the Federal Rules of Bankruptcy procedure, Hood filed a complaint, an amended complaint, and served summonses on the relevant defendants, including TSAC. *Id.* In response, TSAC filed a motion to dismiss the complaint for lack of jurisdiction, asserting sovereign immunity. *Id.*

The Bankruptcy Court denied TSAC's motion, holding that § 106(a) was a valid abrogation of the State's sovereign immunity, which TSAC could not assert. *Id.*, 124 S.Ct. at 1909. In affirming the Bankruptcy Court and the Bankruptcy Appeal Panel, the Sixth Circuit expanded on the Bankruptcy Court's analysis and explained that the States "ceded their immunity from private suits in bankruptcy in the Constitutional Convention, and therefore, the Bankruptcy Clause of the Constitution, Art. 1, § 8, cl. 4, provided Congress with the necessary authority to abrogate state sovereign immunity in 11 U.S.C. § 106(a)." *Id.* (citing *In re Hood*, 319 F.3d 755, 767 (6th Cir.2003)).[14]

The Supreme Court held that a student's loan debt is dischargeable in bankruptcy, but declined to reach the Sixth Circuit's holding that Congress validly abrogated the States' sovereign immunity pursuant to § 106(a). *Id.* Instead, the Supreme Court held that a Bankruptcy court's exercise of its *in rem* jurisdiction over a debtor's bankruptcy estate and the debtor would not infringe state sovereign immunity. *Id.*, 124 S.Ct. at 1913.

---

13. *Compare In re Polygraphex Systems, Inc.*, 275 B.R. 408, 420 (Bankr.M.D.Fla.2002) (finding county property appraiser and tax collector were not arm of the state, and not entitled to sovereign immunity); *with Feltman v. Robbins (In re L. Luria & Sons, Inc.)*, 282 B.R. 504, 505 (Bankr.S.D.Fla.1999) (finding county property appraisers and tax collectors were arms of the state and entitled to sovereign immunity), *aff'd*, No. 99–1967–CIV–HOEVELER (S.D.Fla.2001).

14. The other Circuit Courts reaching the abrogation question arising under the Bankruptcy Code disagree with the Sixth Circuit. *See Nelson v. La Crosse County Dist. Attorney*

*(State of Wisconsin) (In re Nelson)*, 301 F.3d 820 (7th Cir.2002); *Mitchell v. Franchise Tax Bd., State of California (In re Mitchell)*, 209 F.3d 1111 (9th Cir.2000); *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237 (3d Cir.1998); *Dep't of Transp. & Dev., State of Louisiana v. PNL Asset Mgmt. Co., LLC (In re Fernandez)*, 123 F.3d 241, *corrected, reh'g denied*, 130 F.3d 1138 (5th Cir.1997); *Schlossberg v. State of Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140 (4th Cir.1997), *cert. denied*, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998).

The Supreme Court began its analysis by noting that the States can still be bound by some judicial actions without their consent. *Id.*, 124 S.Ct. at 1910. The Supreme Court compared the case to *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998), in which it held that the Eleventh Amendment does not bar federal jurisdiction over *in rem* admiralty actions when the State is not in possession of the property. *Hood*, 124 S.Ct. at 1910. *Deep Sea Research* involved a contest over title to a historic shipwreck in California's territorial waters. *Id.* California challenged the Deep Sea Research's federal *in rem* action to determine rights to the wreck, "arguing that it possessed title to the wreck and that its sovereign immunity precluded the court from adjudicating its rights." *Id.* The Supreme Court held that California's sovereign immunity did not prevent the federal court from determining title to the wreck because sovereign immunity did not prohibit *in rem* admiralty actions where the state did not possess the *res.* *Id.*

Analogizing to the admiralty context, the Supreme Court reasoned that the discharge of a debt by a bankruptcy court is also an *in rem* proceeding. *Id.* The Supreme Court's subsequent analysis explains the bankruptcy court's *in rem* jurisdiction over the *res.* The Bankruptcy Code does not define the *"res"* in bankruptcy, but Black's Law Dictionary defines it as "an object, interest, or status, as opposed to a person." Black's Law Dictionary 1332 (8th ed.2004). The bankruptcy court's *in rem* jurisdiction, therefore, is premised on its authority to adjudicate claims to a thing, e.g., the *res* of bankruptcy. In bankruptcy cases, the *res* includes

a debtor's property and the debtor's estate, over which the bankruptcy court has exclusive jurisdiction. *Hood*, 124 S.Ct. at 1910 (citing 28 U.S.C. § 1334(e)).[15] In other words, the bankruptcy court's jurisdiction "is premised on the debtor and his estate, not on the creditors." *Id.* (citing *In re Collins*, 173 F.3d 924, 929 (4th Cir. 1999)). Accordingly, the bankruptcy court's *in rem* jurisdiction is *nearly* plenary, but does not include subjecting nonparticipating creditors to personal liability. *Id.*, 124 S.Ct. at 1911 (citing *Freeman v. Alderson*, 119 U.S. 185, 188–89, 7 S.Ct. 165, 30 L.Ed. 372 (1886)).

As a consequence of the bankruptcy court's *in rem* jurisdiction, States, even those that choose not to participate in the proceeding, are bound by a bankruptcy court's discharge order in the same way as are participating creditors. *Hood*, 124 S.Ct. at 1911 (citing *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933)). The Supreme Court recognized that under § 523(a)(8) a debtor's liability on a student loan debt will survive a general discharge order unless the debtor secures an undue hardship determination. *Id.*, 124 S.Ct. at 1912. A State, therefore, may receive the benefit of the debt surviving the debtor's general discharge without participating in the case. *Id.* However, the Supreme Court noted that the presumptive benefit of the nondischargeability of student loan debts does not affect the court's underlying authority. *Id.* The Supreme Court explained that the undue hardship determination was not a "suit" against a State:

"A debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt;

---

**15.** Section 1334(e) of Title 28 provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate."

nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts." *Id.*

The proceeding to determine whether a debtor is entitled to the undue hardship discharge does not take anything away from a State merely because it is an "individualized adjudication." *Id.*

The Supreme Court concluded that its holding in *Hood* was consistent with its previous cases concerning individualized determinations of States' interests within the federal courts' *in rem* jurisdiction. *Id.* (citing *Deep Sea Research*, 523 U.S. at 507–508, 118 S.Ct. 1464; *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Van Huffel v. Harkelrode*, 284 U.S. 225, 228–29, 52 S.Ct. 115, 76 L.Ed. 256 (1931)). The Supreme Court concluded that just as the exercise of *in rem* admiralty jurisdiction does not pose a threat to state sovereignty, *in rem* bankruptcy jurisdiction similarly does threaten state sovereignty. *Id.*, 124 S.Ct. at 1912.

The implications of *Hood* are far-reaching. The only cautionary notes that the Supreme Court raised were to deny that a bankruptcy court's *in rem* jurisdiction altogether overrides sovereign immunity and to deny "that every exercise of a bankruptcy court's *in rem* jurisdiction will not offend the sovereignty of the State." *Id.*, 124 S.Ct. at 1913, n. 5. One bankruptcy judge has commented that the holding extends beyond loan discharges and encompasses all fundamental matters within a bankruptcy case that relate to the orderly administration of the estate, but do not constitute a suit against the estate. Hon. Rudolph Haines, *Hood Immunizes Discharges*, 2004 No. 7 Norton Bankr.L. Adviser at 4. In fact, Judge Haines speculates that Hood makes sovereign immunity inapplicable to a broad range of matters beyond student loan discharges: "[o]bviously, it should apply to discharge of other kinds of debts owed to states, including taxes." *Id.* This conclusion follows from his observation that "[t]he *Hood* opinion eliminates the distinction some courts had seen between the general discharge and the dischargeability determination as to a specific debt." *Id.* Furthermore, he concludes that *Hood* "also eliminates the distinction some courts made between adversary proceedings and contested matters, so long as the court's jurisdiction arises in rem and the res is not in the possession of the state." *Id.*

This Court agrees with Judge Haines, and accordingly concludes that *Hood* controls the present controversy. In this case, the Sale Order permitting Lake Worth Generation to sell substantially all of its assets, over the objection of the Tax Collector, resulted in a portion of the proceeds from the sale going to satisfy the claims of the City of Lake Worth and Cochrane Engineering. The Sale Order further provided that all other liens, claims, interests, and encumbrances would attach to the proceeds of the sale. The Debtor's attorney still holds $8.6 million in net proceeds in trust from that sale for distribution to remaining creditors. These funds are more than adequate to cover whatever tax bill this Court determines is owed the Tax Collector.

This Court maintains *in rem* jurisdiction over the proceeds of the sale of the Debtor's personal property that once constituted the *res* of the estate. It is a related, but not identical point that the Court's *in rem* jurisdiction similarly extends to the distribution of those proceeds, including distributions to satisfy tax liens. *In rem* jurisdiction over the *res* must extend to jurisdiction over the distribution of proceeds from sales of the *res*. There is no question that the Court has the authority to authorize a sale of property "free and clear" of a State's tax lien. *Hood*, 124

S.Ct. at 1911 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). Because the Court has the authority to authorize a sale "free and clear" of a State's tax lien, the Court also has the concomitant authority to authorize sales of assets that would satisfy such liens. It similarly follows that the Court has the authority to determine the extent of the lien that will be satisfied from the proceeds of the sale of the Debtor's assets. This authority is a logical consequence of the power to sell property "free and clear" of such liens. The Court's power to authorize a sale of property free and clear of liens or, alternatively, to preserve the proceeds of a sale to satisfy a lien, would not make sense unless the Court could first determine the extent of the debt that gave rise to an outstanding lien.

■ The Court realizes that there are parallel State procedures to determine the extent of the tax lien in this case. However, the Debtor did not pursue those State avenues to adjudicate the contested tax assessments. The Debtor would only be prevented from contesting the underlying tax assessments in bankruptcy court if the assessments had been previously adjudicated in a State proceeding before the commencement of the bankruptcy case. *See* § 505(a)(2)(A). The Debtor chose to contest the assessments in bankruptcy court, however, and judicial resources would be better preserved if the Debtor's tax liability were determined by this Court.

The proceeds from the sale of the Debtor's assets are currently in the Debtor's attorney's trust account. The Debtor is not requesting the return of any property or proceeds from the Tax Collector or the State treasury. The 505(a) Motion merely asks for the determination of the amount of a debt, nothing more. The Tax Collector's argument that the Debtor's 505(a) Motion is a veiled attempt to procure a tax refund is without merit. The Debtor has not paid the taxes, so there can be no *refund* to the Debtor as a result of any order of this Court. The Debtor is not attempting to take any funds back from the State that are in the State's possession. On a related note, it appears to be even less of an affront to State sovereign immunity to determine the amount of a debt than to declare that a specific debt owed to a State is dischargeable. Accordingly, the Court will exercise its jurisdiction to determine the amount of the Tax Collector's lien on the proceeds from the sale of the Debtor's assets.

### The Tax Collector's Procedural Argument

The Tax Collector also argues that the Debtor's Motion should be dismissed because the Motion should have been filed as an adversary proceeding pursuant to Bankruptcy Rules 7001(2) and 7001(9).[16] The Tax Collector's argument on this point is unclear. In the Consolidated Pleading, he argues that the 505 Motion should be dismissed for improper filing because "the issues of value and taxation are state issues." In the Motion to Dismiss, he argues that the Federal Rules of Bankruptcy Procedure demand dismissal. Both arguments are unavailing.

■ First, there exists no provision within Rule 7001 that requires a proceed-

---

**16.** Rule 7001(2) of the Federal Rules of Bankruptcy Procedure requires that an adversary proceeding be filed for "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)." Rule 7001(9) requires than an adversary proceeding be filed for "a proceeding to obtain a declaratory judgment relating to any of the foregoing ..."

ing to determine a tax liability under § 505 to be filed as an adversary proceeding. Therefore, a *motion* filed under § 505 is the proper vehicle to determine a tax liability. The Tax Collector is correct that Rule 7001(2) requires that a proceeding to determine the extent of a lien be filed as an adversary proceeding. However, the Debtor's Motion was filed under § 505(a) to determine a tax liability. The Tax Collector did not initiate the current dispute as a proceeding to determine the extent of a lien. His objection to the Debtor's § 505(a) Motion does not thereby transform the proceeding into one of the Tax Collector's choosing by means of his Objection.

■ Second, under the Federal Rules of Bankruptcy Procedure, a party that is potentially subject to an adverse court order, issued as the result of a non-adversary proceeding, is afforded the same procedural safeguards as in an adversary proceeding. Rule 9014 of the Federal Rules of Bankruptcy Procedure details the procedures for contested matters that are not governed by Rule 7001. Rule 9014 provides in pertinent part:

> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought ... The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071 ...

The rules of procedure for contested matters ensure that contested matters are governed by the same rules as adversary proceedings. Therefore, the Tax Collector has been afforded the same procedural

safeguards in opposing the Debtor's 505(a) Motion as he would have received had the Debtor filed an adversary proceeding. The Tax Collector has received all relevant notices and lodged objections with this Court throughout the case. However, the Tax Collector is not merely complaining about the proper form of process that should have commenced the Debtor's 505(a) Motion. The heart of the Tax Collector's procedural objection is another form of the sovereign immunity argument. That is, the State should not be subject to coercive process that affronts its dignity as a co-equal sovereign.

The *Hood* decision is controlling on this issue as well. This Court's determining the Debtor's taxes pursuant to the 505(a) Motion is not an attempt to exercise *in personam* jurisdiction over the Tax Collector. *See Hood,* 124 S.Ct. at 1914. If the Debtor had commenced an adversary proceeding to determine the amount of taxes owed, it would have been required to serve the Tax Collector with a summons and complaint, arguably a more coercive form of process than a motion. *See Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114 ("The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."). In *Hood,* the Supreme Court remarked that the serving of a summons "is indistinguishable in practical effect from a motion." 124 S.Ct. at 1914. Conversely, the filing of a motion in this case is indistinguishable from the service of a summons in an adversary proceeding. *See id.* Just as the debtor in *Hood* desired an adjudication of the dischargeability of her debt, the Debtor in this case wants the determination of its debt to the tax collector. *See id.* Neither request for

relief is an adjudication pursuant to the Bankruptcy Court's *in personam* jurisdiction. In both cases, the Court's *in rem* jurisdiction allows it to adjudicate the request for relief without *in personam* jurisdiction over the State. *See id.*

■ The Federal Rules of Bankruptcy Procedure do not trump or limit a bankruptcy court's authority under the Code to rule on substantive rights. *Id.* ("To conclude that the issuance of a summons, which is required only by the Rules, precludes Hood from exercising her statutory right to an undue hardship determination would give the rules an impermissible effect."). As the Supreme Court noted, " '[The Bankruptcy Rules] shall not abridge, enlarge, or modify any substantive right.' " *Id.* (citing 28 U.S.C. § 2075). Therefore, the Tax Collector's assertion that the Debtor's 505(a) Motion should be dismissed on procedural grounds for failure to file the Motion as an adversary proceeding under Rule 7001 must fail because the Debtor's substantive right to have its tax liability determined is superior to these more minimal procedural concerns.

### *The Motion to Abstain*

■ Finally, the Tax Collector urges the Court to abstain from determining the amount of taxes owed by the Debtor pursuant to the "mandatory abstention provision of 28 U.S.C. § 1334." The Court construes the Tax Collector's argument as an appeal to § 1334(c)(2), which provides as follows:

"Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

The statute directs the Court to abstain from hearing a state law claim when the following requirements are met:

"(1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding. That is, it is related to a case under title 11 but does not arise under or arise in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." *United Beverage Florida, LLC v. General Electric Company d/b/a GE Supply (In re United Container, LLC)*, 284 B.R. 162, 171 (Bankr.S.D.Fla.2002) (citations omitted).

The balance of these factors weighs in favor of the Court exercising jurisdiction. The Motion was brought pursuant to 11 U.S.C. § 505(a)(1); therefore, the basis for federal jurisdiction over the Motion is § 1334(b). Therefore, the first factor argues for abstention. However, none of the other factors are met. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (0). No action to determine these taxes has been commenced in State court, and because the 505(a) Motion is currently pending before this Court, it could be more swiftly determined in this Court. Accordingly, the mandatory abstention provision of § 1334 does not apply.

■ The balance of the same factors dictates that the Court should not use its discretion and abstain according to § 1334(c)(1), which provides as follows:

"Nothing in this section prevents a district court in the interest of justice, or

in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding under title 11, or arising in or related to cases under title 11."

Although this Court could entertain a more exhaustive list of factors as in an equitable remand proceeding under 28 U.S.C. § 1452, it need not do so. *See In re United Container,* 284 B.R. at 177 (noting similarity of permissive abstention and equitable remand doctrines) and (citing *Thomas v. R.J. Reynolds Tobacco Company,* 259 B.R. 571, 578 (S.D.Miss.2001)). This Court notes that the Debtor's outstanding taxes owed to the Tax Collector must be determined in accordance with applicable State law. This Court will so determine the Debtor's taxes, and by doing so casts no doubts or reservations on the State courts' ability to do so. However, efficiency and convenience persuade this Court to retain the present issue in the Bankruptcy Court. Given the simple nature of this tax controversy and this Court's administration of all other issues in the Debtor's Chapter 11 case, this Court sees no affront to an otherwise busy State court in determining the Debtor's outstanding taxes according to Florida law.

This Court's obligation to determine the value of the Debtor's property and taxes based on that valuation in accordance with Florida law guarantees that this Court will not be usurping a State function in violation of the Tenth Amendment.[17]

### Conclusion

For the foregoing reasons the Tax Collector's Motion to Dismiss is **DENIED.** The Court will exercise its *in rem* jurisdiction and determine the Debtor's outstanding tax liabilities. Nothing in this **Opinion and Order** should be construed to decide the actual *amount* of the Debtor's outstanding tax liabilities to the Palm Beach County Tax Collector.

### Order

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Tax Collector's Motion to Dismiss is **DENIED.**

2. The Court will determine the amount of the Debtor's outstanding taxes pursuant to 11 U.S.C. § 505(a)(1).

3. The parties will contact Judge Hyman's Courtroom Deputy to request a hearing to value the Debtor's property in order to determine the amount of the Tax Collector's lien.

---

**17.** The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."